STILSON *v.* UNITED STATES.

SUKYS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Nos. 264, 265. Argued October 20, 21, 1919.—Decided November 10, 1919.

The denial of a severance in a criminal case is within the discretion of the judge. P. 585.

The Constitution does not require Congress to grant peremptory challenges to defendants in criminal cases; and the long-standing provision of law (now in Jud. Code, § 287) that all of several defendants shall be treated as one for the purposes of such challenges does not infringe the right to an impartial jury guaranteed by the Sixth Amendment. *Id.*

In a prosecution for conspiracy to violate the Espionage and Selective Service Acts, where the jury were in substance instructed to consider certain publications uttered by the defendants, and determine from them, considered with all the other evidence, whether they

amounted to violations, *held*, that related portions of the charge, on their right to call upon their general knowledge and information, were not objectionable. P. 587.

The district judge is not required to analyze and discuss the details of the evidence, particularly when not requested to comment upon any special phase of it. P. 588.

The evidence in this case was ample to justify the District Court in submitting the question of the defendants' guilt to the jury. *Id.*

254 Fed. Rep. 120, affirmed.

THE case is stated in the opinion.

*Mr. Henry John Nelson* for plaintiffs in error.

*Mr. Assistant Attorney General Stewart,* with whom *Mr. W. C. Herron* was on the brief, for the United States.

MR. JUSTICE DAY delivered the opinion of the court.

The plaintiffs in error were indicted with two others, not apprehended, and were convicted under the conspiracy section (4) of the Espionage Act, 40 Stat. 217, 219. The section which the plaintiffs in error were charged with a criminal conspiracy to violate (3), provides: " . . . whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty, in the military or naval forces of the United States, or shall willfully obstruct the recruiting or enlistment service of the United States, . . . shall be punished by a fine of not more than $10,000 or imprisonment for not more than twenty years, or both."

A second count in the indictment charged a conspiracy to violate certain provisions of the Selective Service Act. The sentences imposed, within the act upon either count of the indictment, were three years' imprisonment for Stilson and three months for Sukys. The Government does not press the conviction upon the second count.

The overt acts charged to have been committed in pursuance of the conspiracy consisted of the publication and distribution of a certain newspaper called "Kova" and circulars published in the Lithuanian language. The cases come directly to this court because of constitutional questions raised and decided in the court below. Since the proceedings in that court some of the constitutional questions have been determined, and need not be considered. *Schenck* v. *United States*, 249 U. S. 47; *Frohwerk* v. *United States*, 249 U. S. 204; *Debs* v. *United States*, 249 U. S. 211.

Counsel for plaintiffs in error in view of these decisions only press for consideration certain assignments of error comprised in the following summary:

1. Whether or not, in ruling that there could be no severance of defendants and that a peremptory challenge by one defendant should count as a challenge by all defendants, the trial Judge was in error under Article VI of the Amendments of the United States Constitution.

2. Whether or not the trial Judge erred in his charge to the jury in that portion thereof in which he said the jury might determine the guilt of the defendants from general information.

3. Whether or not the trial Judge erred in not refreshing the jury's memory as to the evidence.

4. Whether or not the trial Judge erred in overruling a motion to take the case away from the jury, and in refusing to charge the jury, "Under all the evidence your verdict should be 'not guilty.'"

Of these in their order:

1. It is provided in the Sixth Amendment to the Constitution of the United States that in all criminal prosecutions the accused shall enjoy the right to a trial by an impartial jury. That it was within the discretion of the court to order the defendants to be tried together there can be no question, and the practise is too well established

to require further consideration. The contention raised under the Sixth Amendment comes to this: That because plaintiffs in error were not each allowed ten separate and independent peremptory. challenges they were therefore denied a trial by an impartial jury. The statute regulating the matter of peremptory challenges is clear in its terms and provides: "When the offense charged is treason or a capital offense, the defendant shall be entitled to twenty and the United States to six peremptory challenges. On the trial of any other felony, the defendant shall be entitled to ten and the United States to six peremptory challenges; and in all other cases, civil and criminal, each party shall be entitled to three peremptory challenges; and in all cases where there are several defendants or several plaintiffs, the parties on each side shall be deemed a single party for the purposes of all challenges under this section. All challenges, whether to the array or panel, or to individual jurors for cause or favor, shall be tried by the court without the aid of triers."

The requirement to treat the parties defendant as a single party for the purpose of peremptory challenges has long been a part of the federal system of jurisprudence; it certainly dates back to 1865 and was adopted in the Revised Statutes, and has now become a part of the Judicial Code. § 287, 36 Stat. 1166. *Schwartzberg* v. *United States*, 241 Fed. Rep. 348. There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial jury is all that is secured. The number of challenges is left to be regulated by the common law or the enactments of Congress. That body has seen fit to treat several defendants, for this purpose, as one party. If the defendants would avail themselves of this privilege they must act accordingly. It may be, as is said to have been the fact in the trial of the present case, that all defendants may not wish to exercise the right of peremptory

challenge as to the same person or persons, and that some may wish to challenge those who are unobjectionable to others. But this situation arises from the exercise of a privilege granted by the legislative authority and does not invalidate the law. The privilege must be taken with the limitations placed upon the manner of its exercise.

2. It is insisted that there was prejudicial error in so much of the charge as is contained in the following language:

"The next question for you to determine is the presence of essential elements. One of them is, for instance, that the United States is at war. Secondly, that what was done was an attempt to cause insubordination, or what was done did amount to obstructing enlistment, and the question may arise in your mind how you are to determine that. Whenever you are asked as a jury to pass upon anything which is a matter within common knowledge, common information, things which people ordinarily know, which are generally and practically universally known, when you are passing upon such questions, you have the right to call upon your general knowledge and information. You must determine, for instance, the question whether or not we are at war, because unless we are, this indictment goes for nothing. You may determine that from your general information, this is something of which, in the phrase of the law, the law takes judicial notice. So also when you come to determine the question of whether or not there was an attempt to cause insubordination, you take, of course, all the evidence into the case, and you have a right to direct your minds, as naturally you would, to the character of these publications themselves, these pamphlets and these articles, and determine from them, assisted by all the other evidence in the case, whether or not they do reach the dignity of the charge of attempting to cause insubordination, or amount to an obstruction of enlistment."

Certainly no prejudice could arise from an instruction that the jury might be supposed to know the fact that the country was at war.  As to the other part of the charge,— the jury were told to look at all the evidence, including the character of the publications, and determine from them whether there was an attempt to cause insubordination and a willful obstruction of enlistment; in other words— whether they amounted to a substantial violation of the statute.  We find no well-founded objection to this part of the charge.  It is true this language was used in connection with the observations concerning judicial notice as to the country being in a state of war, but we are of opinion, taking the charge together, that the question was fairly left to the jury upon the evidence in the part of the instruction which we have quoted, which left to it to determine whether the facts made a case coming within the denunciation of the statute.

3. It is contended that the court did not analyze and discuss the details of the evidence.  The trial judge left matters of fact to the determination of the jury in a charge commendable for its fairness.  Certainly the lack of discussion in detail does not amount to a valid objection; particularly in the absence of any specific request for comment upon any special phase of the testimony.

4. As to the contention that there was no evidence to warrant the convictions of the accused—it must be borne in mind that it is not the province of this court to weigh testimony.  It is sufficient to support the judgment of the District Court, if there was substantial evidence inculpating the defendants which, if believed by the jury, would justify the submission of the issues to it.  It would serve no good purpose to set forth the contents of the newspaper articles and the circulars, the publication and distribution of which were alleged to be the overt acts in furtherance of the alleged conspiracy.  That they contain appeals tending to cause disloyalty and refusal of duty in

the military forces of the United States, and to obstruct the recruiting and enlistment service of the Government is sufficiently apparent on the face of the publications. That those who by concerted action prepared and circulated such writings could be found guilty of a conspiracy is equally clear. The connection of the plaintiffs in error with the Lithuanian Socialist Federation, whose membership was shown to be actively opposed to the prosecution of the war, is apparent from a perusal of the record. Stilson was the translator-secretary of the Federation. There is evidence tending to show that one of the circulars entitled: "Let us not go to the army" was mimeographed from the typewriter controlled and operated by him. Language of the same character as that set forth in the incriminating circulars is found in articles in evidence which were admittedly written by him.

Sukys had been a correspondent of "Kova," and was afterwards manager of the Kova printing plant and was appointed by the executive committee of the Federation, and incriminating acts of his are clearly shown in the record.

We agree with the trial court that there was ample testimony justifying the submission of the question of the guilt of the accused to the jury, who found both of the plaintiffs in error guilty of concerted action amounting to a conspiracy to violate the provisions of the act. We find no error in this record, and the judgments are

*Affirmed.*

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS, dissented on the ground that as the sentence was upon a general verdict of guilty on both counts, one of which is not sustained, the judgment should be reversed.