96

WEST v. UNITED STATES.
No. 830.

Circuit Court of Appeals, Tenth Circuit.
Dec. 26, 1933.

Granby Hillyer, of Denver, Colo. (H. L. Lubers, of Denver, Colo., and G. R. Hillyer, of Lamar, Colo., on the brief), for appellant.

Thomas J. Morrissey, U. S. Atty., of Denver, Colo. (Ivor O. Wingren, Asst. U. S. Atty., of Denver, Colo., on the brief), for the United States.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

Appellant and Dr. Hoschouer were jointly charged with the offense of forming a scheme for obtaining money by false and fraudulent pretenses and representations and with using the United States mails in executing the scheme. U. S. Code, title 18, § 338 (18 USCA § 338). The scheme and representations, as charged, were that an aqueous solution of gold and sodium chloride in distilled water put up in bottles and labeled by them "909" was a cure for syphilis, and that chronic sores, skin eruptions and throat lesions quickly responded to its use when taken in prescribed doses; that when taken on an empty stomach it would enter the blood stream almost directly and eliminate germs by making the blood stream unsuitable for their reproduction and life. These representations were made in letters and pamphlets sent through the United States mail. It is alleged that the representations made by defendants as to the curative qualities of the solution were untrue, known by the defendants to be untrue, and were made by them for the purpose of obtaining money of those who might be induced to take and use the compound.

Hoschouer was acquitted by the jury. Appellant was found guilty, sentenced to imprisonment in the penitentiary and to pay a fine. At the close of the evidence defendants moved for directed verdicts, and exceptions were saved to the court's refusal. That action is assigned as error, and requires that we review the record in order to ascertain whether the conviction of appellant is supported by substantial proof. If not, verdicts of not guilty should have been directed by the court. Stilson v. United States, 250 U. S. 583, 588, 40 S. Ct. 28, 63 L. Ed. 1154; Moore v. United States, 56 F.(2d) 794, 796; Read v. United States (C. C. A.) 42 F.(2d) 636, 638; Mathues v. United States (C. C. A.) 19 F.(2d) 7.

The substance of the charge is that the compound designated by defendants as "909" had no curative qualities, especially none for the ills named by them, and they used and recommended it as a fraudulent scheme knowing it to be worthless as a remedy. The prosecution to establish that charge called two witnesses, Dr. Norris of Washington, D. C., then holding position of medical officer in the Food and Drug Division, Department of Agriculture, and Dr. Whitehead, then Professor of Pharmacology in the University of Colorado, School of Medicine. Each of these gentlemen testified that the compound used by the defendants as a cure for syphilis and other blood impurities was generally used as

such remedy by the medical profession until about 1910. Neither of the witnesses, however, had ever used it and had no observation or knowledge in practice of the use of gold and sodium chloride as a treatment for syphilis. Dr. Whitehead said that it had at one time been the recognized treatment; that teaching it as a treatment in medical schools was discontinued; and that it has now been abandoned by most of the medical profession since the discovery of the Wassermann test and of Salvarsan and its derivatives and improvements. Dr. Norris had read books on toxicology, venereal diseases and materia medica, and had consulted with Doctors Clark and McCoy engaged in public health service. On information so obtained, coupled with his hospital service and brief practice, he testified that gold and sodium chloride in solution was not a remedy for syphilis, and that it had not been recognized by the profession as a remedy since the Wassermann test came into use about 1910. Dr. Norris obtained his degree of Doctor of Medicine in 1924 from Texas University. He thought proper treatment for syphilis to be a combination of arsenic and bismuth or perhaps arsenic and mercury, "which is still used by some." This extract from the United States Dispensary, 19th Ed., 1907, on pages 219 and 220, was called to the attention of the witness: In speaking of gold and sodium chloride it was said of it, "It has also been commended in syphilis." To this the witness answered that he had already admitted that it had been recommended 40, 50, 100 or 200 years ago. His attention was called to Professor Culbreth's manual on materia medica and pharmacology, Maryland College of Pharmacy, Department of the University of Maryland, of date 1927, wherein at page 839, after describing gold and sodium chloride, it said: "Action similar to that of mercury, used for syphilis, scrofula, sclerosis of the spine, liver and kidneys." The witness replied the publication was not an authority on syphilis. His attention was called to the thirteenth edition of Potter's Therapeutics, Materia Medica and Pharmacy, where it is said that during the seventeenth and eighteenth centuries gold was highly esteemed as an anti-syphilitic, and during the first quarter of the present century it was in high repute among European physicians as a remedy for syphilis and scrofula. The witness replied that Potter was written before there was any Wassermann test, and they did not know what syphilis was. He didn't consider Potter an authority. He testified that Merck's Manual of Materia Medica gives gold and sodium chloride as a remedy in recurring syphilitic afflictions where mercury and potassium iodide fail, but he thought Merck would put anything in a book if he could sell a drug.

The only other witness offered by the prosecution to show that the compound is not a remedy resides in Utah. He received the treatment from defendants through the mail and took it as directed. He testified that he was not cured by the treatment; that he had previously taken treatment from others; that he never came to Denver for treatment.

As to the merits of the compound, Dr. Hoschouer on behalf of defendants testified that while he was a student at Cotner University, Lincoln, Nebraska, he was instructed in the medical department that gold and sodium chloride was a proper treatment for syphilis; that he graduated from there in 1910, and had been a practicing physician ever since; that he had used gold and sodium chloride many times in all these years with good results, and is still using it; that he became associated with appellant West in 1929, and the state board of medical examiners objected to his being associated with a layman and revoked his license for six months, then reinstated it, and he has been practicing ever since; that appellant West is not a doctor, but a graduate pharmacist. He testified that the only one he knew to complain was the witness from Utah. He knew of no other patient of theirs who complained. He denied the charge of false and fraudulent statements about the compound in the indictment.

The defendants introduced three witnesses who had taken "909" for syphilis or syphilitic conditions. Each testified that he had been cured by it.

Appellant took the witness stand. His father had started the business of selling the compound. The son joined with him for a few years and then took over the business. Sometime later Hoschouer became interested with him. Appellant is a graduate pharmacist. He testified that many cures had been made by using "909" as directed, to his knowledge; that he never knew of anyone to complain who had taken the compound as directed, except the witness from Utah, and that he knew many who had been cured; that the treatment gave general satisfaction to the patients.

Patients who came to defendants' office for treatment were sent to a laboratory for blood test, and were not given the compound unless the blood showed impurities. After the treatment lasted six months another blood test was taken, and a negative showing of impurities

in the blood was accepted as a cure. The tests, some of which were introduced in evidence, made at the Hill laboratory in Denver, were in this form before treatment: "The cobra venom (French) test for syphilis showed positive (XXX)." After treatment, this form: "The cobra venom (French) test for syphilis showed negative."

Both defendants' testified that the statements in the letters and circulars were not made for fraudulent purposes, but in good faith and in the belief they were true statements.

Dr. Whitehead obtained his degree in medicine in 1921. He had no knowledge, experience or observation in the use of gold and sodium chloride in the treatment of syphilis. He had gained some knowledge of other medicines or treatments and learned that at the present time the use of gold chloride as a treatment for syphilis is not taught in medical schools. He knew that at one time it was the generally recognized treatment for syphilis, but that it had been abandoned by most of the medical profession since the discovery and use of the Wassermann test. He did not claim to have treated cases of syphilis.

Dr. Norris had had some experience in treating syphilis in hospitals. He gave injections of arsenic, bismuth or mercury and had some cases in his general practice, but he never used the compound of gold and sodium chloride, nor did he testify that he had observed its use by others. All the information he had on the subject was from reading and talking with Doctors Clark and McCoy. He conceded, as did Dr. Whitehead, that until the Wassermann test it was a recognized treatment. The testimony of these two doctors, plus that of the witness who resided in Utah and had used the compound, fails in our opinion to constitute substantial proof that said compound was not a cure or remedy, as charged in the indictment, and that the prosecution's case wholly failed in that respect.

If the compound used and sold by the defendants was a cure or remedy for the ailments as represented by them, then no offense as charged in the indictment was committed by them; and the burden was on the prosecution to prove by substantial evidence it was not a cure or remedy before the court could submit the case to the jury.

If the compound was no remedy at all for the ailments, then the representations made by the defendants that it was a remedy were false; but even so, the jury could not find appellant guilty unless he knew they were false at the time they were made, or acted with reckless indifference as to whether they were true or false.

But the court in submitting the case to the jury did so only on the latter proposition. It, in effect, assumed that the compound was not a remedy. In its instructions it said to the jury:

"So the whole case boils down to a question of their intent or honesty of purpose in making the representations they did in these letters, and in selling and distributing this so-called chloride of gold and sodium as a cure for blood disease or syphilis. * * *

"And, furthermore, if you believe from the evidence that it was a fraudulent scheme, the fact that there may have been some merit from a medical point of view in this medicine is no defense."

Nowhere in the instructions did the court tell the jury that if the remedy was an effective one for the purposes for which it was represented they could not be convicted. Clearly the proof demanded such an instruction. The witnesses for the prosecution on that subject testified that it had been a recognized remedy for a great many years, that it was taught in medical schools and commended by writers for such ailments. There was testimony that it was still being used and was effective. Dr. Whitehead did not say that all of the profession had abandoned its use. He said it had "been abandoned by most of the medical profession since the discovery of the Wassermann test." The court, in commenting on his testimony, told the jury that the doctor said, "that this remedy had not been used or recognized by the medical profession as the cure for syphilis for over twenty-five years; that no doctor would prescribe it today." We are unable to find the substance of that statement in the doctor's testimony.

Likewise as to the testimony of Mr. Wright, the government chemist who made an analysis of a bottle of the compound and found it to be a solution of gold and sodium chloride. Aside from that he said nothing except at the close of his statement we find this: "that he does not know what would constitute a proper dose of gold and sodium chloride; that the mixture contained about forty per cent metallic gold and that he does not know what it is used for nor the proper amount of gold and sodium chloride that should have been in the mixture, that he knows nothing about it." The judge's certificate to the bill of exceptions certifies that it "contains all of the evidence offered or introduced upon the trial of this case on the part of the defendants as well as the United

States, and all of the proceedings had * * * ." The court in commenting on the testimony of Mr. Wright, in its instructions to the jury, said that. Mr. Wright testified, among other things, "The most that can be said for it according to Mr. Wright is that it is harmless." To say of a claimed remedy, "it is harmless," is its condemnation. As to both Dr. Whitehead and Mr. Wright the court was in error, and the error was prejudicial, assuming a case for the jury.

Reversed and remanded.