Julian T. WILLIAMS, Charles G. Croft, Milton W. Johns, Albert D. Roth, William H. Overstreet, Thomas Pierson, Wilbur L. Dyches, and Harry Chassereau, Appellants,

v.

UNITED STATES of America, Appellee.

No. 6777.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 8, 1954.

Decided Dec. 27, 1954.

Julius D. Zerbst, Jr., were convicted under Count One alleging conspiracy.

The indictment further charged Alfred M. McCormack, Edna Brown, Frazier Collier, Zeno Hutchenson, Joe Jenkins, George Kline, Julius Tealy, Eddie Mitchell, Abraham Washington, Pete Howard Altman and Fred Ross, Jr., as defendant conspirators with a number of other co-conspirators not indicted. After the Government had rested its case, the Court directed judgments of acquittal on Count One, with the consent of the Government, as to Alfred M. McCormack, Edna Brown, Frazier Collier, Zeno Hutchenson, Joe Jenkins, George Kline, Julius Tealy, Eddie Mitchell, Abraham Washington, Pete Howard Altman and Fred Ross, Jr.

Ernest F. Hollings, Charleston, S. C. (Robert M. Hollings, Oliver T. Wallace, Paul N. Uricchio, Jr., and Klyde Robinson, Charleston, S. C., on the brief), for appellants Julian T. Williams and others.

Silas S. Seideman and Jack P. Brickman, Charleston, S. C., for appellant Harry Chassereau.

Theodore D. Stoney, Asst. U. S. Atty., Charleston, S. C. (N. Welch Morrisette, Jr., U. S. Atty., Columbia, S. C., and C. H. Whetstone, Sp. Asst. to Regional Counsel, Internal Revenue Service, Atlanta, Ga., and Sp. Asst. to Atty. Gen., on the brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The appellants, Julian T. Williams, Charles G. Croft, Milton W. Johns, Albert D. Roth, William H. Overstreet, Thomas Pierson, Wilbur L. Dyches, and Harry Chassereau, were tried in the United States District Court for the Eastern District of South Carolina upon an indictment alleging a violation of Section 371, Title 18, of the United States Code, of conspiracy to violate a number of sections of the Internal Revenue laws relating to liquor. These appellants, with William J. Koster and

The indictment, besides the conspiracy charge in Count One, consisted of twenty-five other counts charging substantive offenses by certain of the appellants in violation of the Internal Revenue laws relating to liquor. The appellant, Julian T. Williams, was found guilty by the jury on substantive Counts Two, Three, Four and Five; the appellant William H. Overstreet was found guilty by the jury on substantive Counts Six and Seven; the Eighth and Ninth Counts were judgments of acquittal by the Court with the consent of the Government, as to Albert D. Roth and Alfred M. McCormack; on substantive Counts Ten and Eleven, the appellant Harry Chassereau was found guilty; on substantive Counts Twelve and Thirteen the appellant Harry Chassereau was acquitted by direction of the Court, with the consent of the Government; on substantive Count Fourteen the appellant Charles G. Croft was acquitted by direction of the Court, with the consent of the Government; on substantive Counts Fifteen and Sixteen the appellant Milton W. Johns was acquitted by direction of the Court, with the consent of the Government; on substantive Counts Seventeen, Eighteen, Nineteen and Twenty, the appellant Wilbur L. Dyches was found guilty by the jury; on substantive Counts Twenty-one, Twenty-two,

Twenty-three and Twenty-four, the appellant William H. Overstreet was found guilty by the jury; on substantive Counts Twenty-five and Twenty-six, Julius D. Zerbst, Jr., was acquitted by direction of the Court, with the consent of the Government.

Sentence was duly imposed upon all of the appellants and upon William J. Koster and Julius D. Zerbst. William J. Koster and Julius D. Zerbst have not appealed. With the exception of Harry Chassereau, all of the appellants were members of the Police Force of Charleston County, South Carolina. Harry Chassereau operated a filling station, which was one of the distribution points maintained for whiskey, on which the federal tax had not been paid.

Appellants have set forth eight points as grounds for a reversal of the judgment below. We discuss these points in order.

"Point 1. The Government should not be allowed to string together for common trial two or more separate conspiracies to violate and numerous violations of the Internal Revenue Code when the only nexus among them lay in the fact that the defendants were all members of the same police department. Such lumping together was intentionally violative of the defendants' rights to a separate trial and prevented a reliable presentation of evidence to the jury."

We proceed to dispose of the contention that the record fails to disclose sufficient evidence to take to the jury the question of a general conspiracy among appellants but that the record shows only numerous unrelated and separate violations of the federal internal revenue laws with the only nexus between these acts and these appellants lying in the fact that the appellants (with the exception of Harry Chassereau) were members of the same police department. This evidence, which was quite voluminous and given by many witnesses, may be likened to the web of the spider. No single strand, or even several strands, would be sufficient. Yet when all these strands are considered together, and their interrelations and connections are considered, they form, we think, a complete web, which was more than sufficient to take to the jury the question of a general conspiracy among the appellants. On all this evidence, the jury might well have found (as we think they did find) that all those acts just could not have happened save on the theory of a consistent pattern of agreement between these appellants.

This evidence is far too voluminous to be discussed here in detail. Even a compact summary of the most important parts of it covers a dozen pages of the Government's brief. We content ourselves with mentioning only a few high spots of this evidence.

There was, for example, evidence that Harvey Grooms went into the illicit liquor business with Harry Chassereau upon the latter's assurance that the Charleston County Police Force had been "bought off" and would not interfere and, further, that if Grooms should be stopped by the police while hauling illicit liquor, Grooms was to tell the police that the liquor belonged to Harry Chassereau. A like assurance was made to Jordan Schofield who helped Grooms to haul this liquor.

Ample proof was offered of the cover-up activities of Sergeants Overstreet and Roth as to illicit liquor and of an extensive escort service for bootleggers operated by Overstreet and Police Officers Croft and Zerbst. Elaborate instructions seem to have been issued to members of the Charleston County Police Force by Lieutenant Welch and Sergeant Johns as to the proper method of handling bootleg cases, to the economic profit of policemen and the corresponding detriment of law enforcement. James Chassereau testified that in one instance, when a bribe was taken from a bootlegger named Moore, twenty-five dollars was to be paid to Chief of Police Williams; and James Chassereau further

testified that Sergeant Johns and Officer Koster each took a case of the bootlegger's whisky.

Sergeants Roth, Limehouse and McCormack took whiskey from a bootlegger in part payment for his release. Solomon Ford, a bootlegger, stated that he had paid money to Chief Williams, Sergeants Johns and Croft and Officer Zerbst. Levinia Washington paid a weekly stipend to Officer Pierson for protection, and when she stopped these payments, Chief Williams raided her establishment. Chief Williams seems to have sold whiskey to Solomon Ford, Sergeant Croft collecting the money.

Particularly damaging to these appellants was the testimony of James Chassereau, who for some time was a member of the Charleston County Police Force, as to the sinister operating relationship between Chief Williams, Sergeant Johns, Sergeant Roth and Officer Koster. The testimony of West and Ford indicated the close cooperation with this group on the part of Officers Croft and Pierson. Agent Connell's evidence indicated an extensive and well organized system of police escorts for bootleggers operating in Charleston County, upon adequate compensation to the police, in which Officers Overstreet, Dyches and Zerbst were involved. On one occasion, Overstreet complained that he was not being paid enough money by Harry Chassereau for the protection of Chassereau's bootleg runners.

Further evidence of the sordid activities of appellants, as individuals and in various combinations, was given by witnesses Burroughs, Investigator Gwynne, distillery operator Causey, Barker, Schofield and Jones. The record here disclosed a police department honeycombed with graft, under the leadership of Chief Williams. There was more than ample evidence to support the jury's finding that the appellants were engaged in a well organized conspiracy to violate the federal internal revenue laws as to illicit whiskey.

The District Judge here, on hearing of a motion for a directed verdict, after the Government had rested, stated:

"Well, Mr. Hollings, if the evidence in this case, whether or not it can be believed or not, doesn't make a case of conspiracy, I have misread every case that I have ever read on conspiracy. The evidence is sufficient, to establish a conspiracy if the jury believes it. There doesn't seem to be any question about that. And I don't think you can read the cases and come to any other conclusion other than that."

See, generally, in this connection, Nye & Nissen v. United States, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919; Blumenthal v. United States, 332 U.S. 539, 557–558, 68 S.Ct. 248, 92 L.Ed. 154; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557; Direct Sales Co. v. United States, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674; United States v. Rosenberg, 2 Cir., 195 F.2d 583; Andrews v. United States, 4 Cir., 108 F.2d 511; Comeriato v. United States, 4 Cir., 58 F.2d 557; Simpson v. United States, 4 Cir., 11 F.2d 591.

■ Since, as we have held, there was sufficient evidence to take to the jury the question of a general conspiracy to violate the federal internal revenue laws, there was no reversible error committed in trying the appellants together instead of granting separate trials. We find no abuse of the discretion here vested in the District Judge under Rule 8(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. See Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154; Dauer v. United States, 10 Cir., 189 F. 2d 343, certiorari denied 342 U.S. 898, 72 S.Ct. 232, 96 L.Ed. 672; Rakes v. United States, 4 Cir., 169 F.2d 739.

■ We find no merit in the second point of certain of the appellants—that they were ineffectively represented by incompetent counsel appointed by the Court, and that they were thus denied rights under the Sixth Amendment of

the federal Constitution. The attack is aimed at Mr. E. F. Hollings, a reputable member of the South Carolina bar and Speaker Pro Tempore of the South Carolina House of Representatives, and a member of the well known firm of Meyer, Goldberg and Hollings. This firm was entered as attorneys of record in this case and signed various motions on behalf of some of these appellants.

Though Mr. Hollings admitted a lack of experience in federal criminal trials, he conducted a vigorous defense and was told by the District Judge: "I think you have done an admirable job."

■ The third point of appellants is that "the Government insisted on proceeding to trial in an involved and important criminal case with a prosecutor in control of the case who had not filed his appointment, had not taken the oath of office, and was not under control of the United States Attorney." This point, too, is quite lacking in substance.

The prosecutor in question, Claud N. Sapp, was Assistant United States Attorney when he appeared before the Grand Jury which returned the instant indictments. He was later appointed Special Assistant to the Attorney General to prosecute the cases before us. The District Judge stated: "I do not know that the District Attorney has advised me that Mr. Sapp has been appointed." The appointment and oath were filed with the District Court prior to the termination of the case. See, Shushan v. United States, 5 Cir., 117 F. 2d 110, 133 A.L.R. 1040, certiorari denied 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531; Belt v. United States, 5 Cir., 73 F. 2d 888; United States v. Powell, D.C., 81 F.Supp. 288. The case of United States v. Huston, D.C., 28 F.2d 451, relied upon by appellants, is not in point, since the case involved the appearance in the Grand Jury room by an unauthorized attorney.

The point, Number 4, that gives us the most serious concern is in connection with the Aiken Spires hit-and-run automobile accident. According to the District Judge, this was the only ground seriously argued on the motion of appellants for a directed verdict of acquittal or in the alternative for a new trial.

As to this incident, we quote from the opinion of the District Judge:

"When Julian T. Williams was being cross examined by the Government's attorney he was asked the question whether in 1947 he had accepted $1,200 from George West in connection with the Aiken Spires hit-and-run case. Mr. Williams denied receiving any money and the Government's attorney put him on notice that he was going to contradict him. In reply the Government called George West as a witness who testified that he had paid $1,200 to Julian T. Williams in connection with the Spires hit-and-run case and that as a result of having paid this, nothing was ever done. No objection was made by the attorney for Julian T. Williams nor any exception taken to this testimony. The attorney for Julian T. Williams cross examined the witness George West at length and the next day made a motion to strike the testimony. The defendant's attorney earnestly urges that it was improper to permit Julian T. Williams to be contradicted on a collateral matter. His contention is that the acceptance of $1,200 in 1947 by Julian T. Williams in connection with the Aiken Spires hit-and-run case is strictly a collateral matter, and that when the defendant Williams denied that he had accepted it the Government's attorney was bound by this denial.

\* \* \* \* \* \* \*

"In the case under consideration testimony which showed that defendant Julian T. Williams had previously accepted bribes in other cases than liquor cases clearly indicated a state of mind, and tended to establish a common scheme or purpose and also guilty knowledge, intent and motive. The crime charged here

is that an unfaithful public servant accepted bribes to permit illegal liquor to come into the city of Charleston. What better evidence could be presented to show the state of mind of the defendant than that which was presented with reference to accepting the bribe of $1,200 in connection with a hit-and-run driver case?

\* \* \* \* \* \* \*

"While it is my opinion that the testimony with reference to the acceptance of $1,200 in the hit-and-run case indicates a state of mind which might logically be said to be related or connected with the crime charged, I am certain that this evidence was not prejudicial to the defendant. The jury had listened to testimony for three weeks and had heard evidence from numerous witnesses which showed a concerted action between the defendants in permitting illicit liquor to come into the city of Charleston after having accepted bribes therefor. The testimony in question was just a link in the chain of circumstances which had been presented against the defendants. It is inconceivable to me that this testimony could have had anything to do with the jury's verdict. Even if it were not admissible it must be shown that its admission was prejudicial. This cannot be shown in view of the overwhelming evidence of defendant's guilt."

In support of his holding here, the District Judge cited the cases of Owens v. United States, 4 Cir., 201 F.2d 749; Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, and Breedin v. United States, 4 Cir., 73 F.2d 778.

Complaint is also made on behalf of appellant Williams that the District Judge would not permit witnesses to testify in rebuttal of the testimony of West. Defense counsel introduced the investigative report relating to this incident with this remark:

"Mr. Hollings: \* \* \* If your Honor please, we will have to settle this now. Lieutenant Knight was subpoenaed this morning. If we can go ahead with no objection, I will just put that record in."

The report was admitted into evidence as Defendants' Exhibit AT. In addition to this, counsel for appellant Williams, in the presence of the Coroner of Charleston County, put into the record a statement as to what the Coroner would testify. Counsel for the appellants did not offer to put in any other witnesses than these two. There was thus, in effect, a substantial compliance with the offer of this rebuttal testimony.

The recent (and very celebrated) case of United States v. Provoo, 2 Cir., 215 F.2d 531, is, we think, clearly distinguishable. From the opinion of Circuit Judge Swan, 215 F.2d at page 537, we quote:

"No authority has been cited which suggests that homosexuality indicates a propensity to disregard the obligation of an oath. The sole purpose and effect of this examination was to humiliate and degrade the defendant, and increase the probability that he would be convicted, not for the crime charged, but for his general unsavory character. Permitting it was error.

"The error was plainly prejudicial. Indeed we can conceive of no accusation which could have been more degrading in the eyes of the jury nor more irrelevant to the issue of treason on which he was being tried."

Another distinction is that in the Provoo case defendant objected to the questions and immediately moved for a mistrial because they were asked. Here the defendant made no objection either to the question or to the evidence offered in contradiction, though he later moved to strike out this testimony, but cross examined at length the witness offered in contradiction. Having done this he is in no position to complain on appeal of the admission of the testimony. He took a chance on trying to destroy the evidence instead of making a timely objection.

■ Perhaps a stronger reason for denying a reversal is the District Judge's finding that there was no prejudice here in admitting the testimony of West, even if it was error. Also, no proper objection was made to the rejection of the offer of evidence to rebut West's testimony. While it is evident that counsel for the defendants wished to offer some type of evidence, it was never made clear what this evidence was and what they expected to prove by this evidence. According to the District Judge, there was "overwhelming evidence of defendant's guilt." Williams, Chief of the Charleston County Police Force, was the most important figure in this case. Many of the slimy trails here led directly to, or clearly involved, him. Even a cursory glance at the evidence of some of the more important witnesses (notably James Chassereau, Norwood (not George) West and Solomon Ford) afforded convincing proof of his guilt.

We, accordingly, find no ground for reversal on the fourth point of appellants.

There is no force in appellants' fifth point. The District Judge did not use the word "agreement" as an essential element of the crime of conspiracy in precisely the form suggested by appellants. He did, however, use this word in his instructions, and adequately covered the necessary elements of this crime. And he correctly charged that the Government need not prove an express agreement among the defendants to violate the federal internal revenue laws; but that such an agreement or combination may be inferred upon proper proof. And such proof, as we have already indicated, was clearly forthcoming here. See, United States v. Hutto, 256 U.S. 524, 41 S.Ct. 541, 65 L.Ed. 1073; Pettibone v. United States, 148 U.S. 197, 203, 13 S.Ct. 542, 37 L.Ed. 419; Fisher v. United States, 4 Cir., 13 F.2d 756.

Under the sixth point, appellants contend that here there was not "substantial justice done" and that appellants did not truly "have their day in court." Under this point, the District Judge was alleged to have committed some fifteen prejudicial errors. Some of these are already covered under previous points. Otherwise, we think these alleged errors are so trivial and unsubstantial that they do not require even enumeration.

■ According to the seventh and eighth points, it is contended that there was insufficient evidence to take to the jury the questions of the guilt of the appellants, Pierson and Roth, and that the District Judge erred in not directing a verdict of acquittal as to Pierson and Roth. With this contention we cannot agree.

There was ample evidence that Pierson and Roth were parties to the conspiracy and performed overt acts in furtherance of the conspiracy. The names of these two run like a scarlet thread through many parts of the record. As to Roth, we might refer to the specific evidence of James Chassereau as to the Ross incident, tying in the criminal activities of Roth to Willaims and McCormack. Further proof as to Roth was furnished by the clear testimony of Grooms as to bribery in connection with Overstreet and Harry Chassereau. As to Pierson, we may specifically advert to the testimony of Levinia Washington as to the money she paid every week to Pierson upon his assurances of protection; also to the evidence of West as to another bribery incident involving Pierson and Johns.

A separate brief has been filed on behalf of the appellant Harry Chassereau, who was not a member of the Charleston County Police Force. The evidence as to his illegal liquor activities and his close connection with many of his fellow conspirators was strong and convincing. Reference may be made particularly to the testimony of Investigator Connell, Barber, Schofield, Grooms and Jones.

■ Harry Chassereau's contention as to error in the denial of a severance and separate trial is without merit. There was no abuse in the exercise of the discretion here vested in the District Judge under Rule 8(a) of the Federal Rules of

Criminal Procedure. See, Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154; Dauer v. United States, 10 Cir., 189 F.2d 343, certiorari denied 342 U.S. 898, 72 S.Ct. 232, 96 L.Ed. 672; Rakes v. United States, 4 Cir., 169 F.2d 739; Cataneo v. United States, 4 Cir., 167 F.2d 820; United States v. Cohen, 2 Cir., 124 F.2d 164. Nor was there any reversible error in the District Judge's conduct as to a *subpoena duces tecum* for the work sheets of the Charleston City Police Department. The action of the District Judge in this connection was entirely reasonable.

For the reasons indicated, the judgments of the District Court are affirmed.

Affirmed.