BROWN, Judge,
dissenting.
I respectfully dissent and would affirm the convictions and sentences.
Regional drug task force agents received information from a reliable source that Gerald Wayne Kennedy and Charles Mid-dlebrook were making crack cocaine in apartment 27 in the Woodland Terrace Complex at 8080 Greenwood Road in Shreveport, Louisiana. The lessee of record was Jacqueline Jamerson. As a result of this reliable information, these agents set up surveillance.
On September 12, 1989, they observed Charles Middlebrook and Gerald Kennedy entering the apartment. Later, Middle-brook and Kennedy left in a blue and white Cadillac. The car was stopped on Interstate 20 and task force agents seized a bag in the center of the front seat containing what was later determined to be over one ounce of crack cocaine. Kennedy and Mid-dlebrook were placed under arrest and then task force agents obtained a search warrant for the apartment.
Upon execution of the warrant, a large amount of cocaine was found in a utility closet outside the apartment and in the bedroom. A key in Kennedy’s pocket opened the apartment and the utility closet. Altogether, over 900 grams of cocaine was recovered at this location by law enforcement officers. Jacqueline Jamerson, the lessee, was also arrested.
Kennedy and Middlebrook were charged in Count One of a two count Bill of Information with possession of more than 28 grams of cocaine found in the automobile. In Count Two, Kennedy, Middlebrook and Jamerson were charged with possession of more than 400 grams of cocaine found in the apartment and its utility closet.
A jury found Kennedy guilty of both counts while finding Middlebrook guilty of Count One and not guilty of Count Two. The third defendant, Jamerson, was pregnant and during the trial gave birth in an adjoining courtroom. A mistrial was granted as to Jamerson upon a physician’s determination that she was unable to proceed.
During the jury selection process, Kennedy and Middlebrook attacked the “simultaneous challenge” or “blind strike” rule as it was applied in this case.
LSA-C.Cr.P. Art. 799 provides:
In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant. In all other cases, each defendant shall have six peremptory challenges, and the state six for each defendant.
Accordingly, the state had thirty-six peremptory challenges and each of the three defendants twelve. The “simultaneous challenge” or “blind strike” court rule required that the state and the defendants exercise their challenges simultaneously without knowledge of whom the other de *709 sired to challenge. This eliminated an advantage to any party who would withhold a challenge until his opponent acted. This procedure results in a more efficient and faster jury selection process.
The blind strike rule was upheld in Pointer v. United States, 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894), and is authorized by LSA-C.Cr.P. Art. 788 B, which provides:
If the court does not require the tendering of jurors, it shall by local rule provide for a system of simultaneous exercise of challenges.
Rule 15 of the Criminal Rules of the First Judicial District Court, effective January 1, 1990, provides:
Pursuant to Code of Criminal Procedure Article 788, the court adopts this rule to provide for a system of simultaneous exercise of peremptory challenges. At the conclusion of the examination of prospective jurors as provided in Article 786, those prospective jurors who have not been excused pursuant to a challenge for cause shall be tendered to the state and the defendant(s) for simultaneous exercise of peremptory challenge in writing in a manner to be determined by the court.
The trial judge interpreted the rule to require that the three defendants exercise their challenges simultaneously with the state. The trial court did not allow the defense attorneys to discuss or coordinate the use of their challenges.
Kennedy and Middlebrook contend that the interpretation by the trial judge denied full use of their peremptory challenges. The three defendants claim that by not being able to confer among themselves they could conceivably have simultaneously challenged the same twelve venirepersons and by doing so lose the advantage of pooling their challenges to strike thirty-six. Alternatively, defendant Middlebrook contends that the judge, in application of the rule, should have limited the prosecution to twelve challenges to balance each defendant’s twelve challenges.
The trial judge’s interpretation of the rule is' within the plain wording of its language and furthers its purpose. LSA-C.C. Arts. 9 & 10; LSA-R.S. 1:3 & 4. Simultaneous exercise of challenges by all parties without conference insures that no party has foreknowledge of another’s action and speeds the jury selection process.
Nor did the application of the rule interfere with defendants’ exercise of their allotted peremptory challenges. There is no federal constitutional right to peremptory challenges. U.S. Const, amend. VI; Stilson v. United States, 250 U.S. 583, 40 S.Ct. 28, 63 L.Ed. 1154 (1919). LSA-La. Const. Art. 1 § 17 provides, in pertinent part, as follows: “The accused shall have the right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law.” Thus, although the Louisiana Constitution grants to a criminal defendant a right to challenge jurors peremptorily, it does not give him a right to a specified number of challenges. The discretion of the legislature to fix the number of peremptory challenges has been exercised in Art. 799. Art. 799 B further provides that the manner of exercise shall be determined by local court rule.
The right to challenge a potential juror is the right to reject a venireperson, not the right to select a particular juror.[1] The record reflects that eleven venirepersons were challenged by the state alone, twenty-two were challenged by a single defendant, four were jointly challenged by the state and one defendant, and five were jointly challenged by two defendants. Each of the original three defendants exercised all twelve of their allotted peremptory challenges which was precisely what state law provided. Peremptory challenges are a *710 creature of statute and are not required by the U.S. Constitution. It is for the state to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise. As such, the “right” to peremptory challenges is “denied or impaired” only if the defendant does not receive that which state law provides. Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), 108 S.Ct. at 2279.
Defendants’ further contend that the application of the rule “effectively” denied them the full complement of their peremptory challenges. A similar claim, was made in Ross, supra, wherein the defendant, convicted of first degree murder and under sentence of death, challenged his conviction and sentence contending, inter alia, that the trial court’s failure to remove a particular juror for cause forced him to waste a peremptory challenge to rectify the trial court’s error. He claimed this denied him due process of law by arbitrarily depriving him of the “effective” full complement of his nine allotted peremptory challenges. Oklahoma law required defendant to use the challenge to remove the juror in order to preserve the issue for appeal. The United State Supreme Court disagreed with defendant’s contention, holding that the right to peremptory challenge is denied or impaired only if the defendant does not receive that which state law provides. The law provided nine challenges which defendant exercised, so there was no impairment or denial of the right. 108 S.Ct. at p. 2279-80.
Similarly, our inquiry is whether defendants received what state law provided. As previously noted, each defendant exercised twelve peremptory challenges. Under Ross, each received what he was entitled to under Louisiana law and cannot now be heard to complain that the effect was to be denied due process of law. State v. Sevin, 243 La. 1023, 150 So.2d 1 (1963), is distinguishable from the instant case, because each defendant in Sevin exercised less than the twelve challenges provided to him by statute.
The unfairness of which defendants now complain is not in the exercise of the challenges, but in the perceived idea that they were entitled collectively to 36 challenges rather than to 12 individual challenges. Defendants’ argument incorrectly presupposes that the interest of each defendant in peremptorily challenging a prospective juror is the same. The legislature has allotted to each party an equal number of peremptory challenges. The blind strike rule is a legitimate method to make the jury selection process more efficient, and if this is a problem in multiple defendant cases, then the ultimate resolution rests with the legislature. Under Art. 788’s mandate, the legislature has thus far deferred to the trial judges and the courts.
Middlebrook’s alternative contention that the state should have been allotted a total of twelve challenges is contrary to the plain dictate of Art. 799 and is likewise without merit. The logical extension, however, of the majority opinion would require such a result.
Determining that the other alleged errors are without merit, I would affirm the convictions and sentences.
APPLICATION FOR REHEARING
Before MARVIN, C.J., and SEXTON, HIGHTOWER, VICTORY and BROWN, JJ.
Rehearing denied.

. Defendants contended the rule allowed co-defendant Jamerson to peremptorily challenge jurors acceptable to Kennedy and Middlebrook. Most of the cases holding that the right of challenge is the right to reject, not select, a particular juror are of pre-Batson vintage. See, e.g., State v. Jack, 285 So.2d 204 (La.1973) and State v. Richmond, 284 So.2d 317 (La.1973). This jurisprudence must now be understood in light of Batson: a peremptory challenge is the statutory right to reject, not select, a particular prospective juror for any reason, except a racially motivated one.