UNITED STATES of America, Appellee,

v.

Jimmie MERCER, Appellant.

UNITED STATES of America, Appellee,

v.

Gloria MERCER, Appellant.

Nos. 87–2231, 87–2263.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1988.
Decided Aug. 11, 1988.
Rehearing Denied Sept. 8, 1988.

Auther Aaron Hogg, St. Louis, Mo., for appellant Jimmie Mercer.

David R. Freeman, St. Louis, Mo., for appellant Gloria Mercer.

Timothy Wilson, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before FAGG, MAGILL, Circuit Judges, and NICHOL,* Senior District Judge.

NICHOL, Senior District Judge.

The defendant, Jimmie Mercer, was charged and convicted of one count of conspiracy to defraud the U.S. Government in violation of Title 18 U.S.C. § 371, and fourteen counts of passing forged United States treasury checks in violation of Title 18 U.S.C. § 495. Gloria Mercer, Jimmie's wife, was charged and convicted of one count of conspiracy to defraud the U.S. Government in violation of 18 U.S.C. § 371, and fourteen counts of aiding and abetting in the passing of forged treasury checks in violation of Title 18 U.S.C. § 495. Both were tried together.

The treasury checks involved were issued to Gertrude Morgan. Mrs. Morgan was a single 67–year-old woman in 1979. In October, 1979, she moved into the home of her niece, Gloria Mercer, and her niece's husband, Jimmie Mercer. Mrs. Morgan was reportedly last seen on March 21, 1980. Prior to her disappearance, Mrs. Morgan was receiving monthly Social Security payments that were directly deposited into her bank account. Approximately two weeks after Mrs. Morgan's disappearance, someone called the Social Security Administration and cancelled Gertrude Morgan's direct deposit and requested that the checks be mailed to the Mercer residence.

From April 1980 until June 1984, each of Mrs. Morgan's monthly Social Security checks were mailed to the Mercers' home and each check was deposited into Jimmie

and Gloria Mercer's family bank accounts. A simulation of Gertrude Morgan's signature was found on the back of each check.[1] It was the defendants' position that Gertrude was still alive and living in Hawaii with a man she left town with in March of 1980. Mrs. Morgan, however, has never been found.

Gertrude Morgan's disappearance raised more than a mere suspicion with the law enforcement. Federal authorities had Mercers' basement and backyard dug up hoping to find Gertrude Morgan's body. This action, which was unsuccessful, received widespread publicity in local newspapers, on radio and on television.

Gloria Mercer appeals on the theories that her case should have been severed from her husband's, that the District Court[2] erred in not allowing her to strike nine veniremen for cause based upon excessive pretrial publicity, and insufficient evidence to convict. Jimmie Mercer asserts that the Court erred in denying his change of venue motion based upon pretrial publicity, that the Court improperly refused one of his jury instructions, and that there was insufficient evidence for conviction. We affirm the conviction as to both defendants.

I.

Gloria alleges that the District Court erred in failing to grant her motion to sever the trial of her case from that of her husband. We disagree. She moved for severance based on the theory that her husband could testify that she was not involved with negotiating the checks and that she knew nothing about his dealings with Gertrude Morgan. However, because her trial was not severed and he used his Fifth Amendment right against self-incrimination, she was deprived of his exculpatory testimony. Gloria also took the position that severance was proper because of the

---

* The HONORABLE FRED J. NICHOL, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. The expert testified and the exhibits showed that the signature on the back of the checks was first traced with a pencil and then repeated with a felt-tip pen to cover the pencil marks.

2. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

disparity in the quantity and quality of evidence between the two defendants, thus making it difficult for the jury to compartmentalize the evidence against each defendant.

Generally, persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together. *United States v. Mims*, 812 F.2d 1068, 1076 (8th Cir.1987); *United States v. Robinson*, 774 F.2d 261, 265 (8th Cir.1985); *United States v. Jackson*, 549 F.2d 517, 523 (8th Cir.), *cert. denied*, 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977). Under Fed.R.Crim.P. 14 [3], if it appears that a party is prejudiced by such joinder, the trial court may grant a severance of defendants. *United States v. Adkins*, 842 F.2d 210, 211 (8th Cir.1988); *United States v. Lewis*, 759 F.2d 1316, 1341 (8th Cir.), *cert. denied*, 474 U.S. 994, 106 S.Ct. 406, 88 L.Ed.2d 357 (1985).

■ The motion to sever is addressed to the discretion of the trial court. *Adkins*, 842 F.2d at 212; *Robinson*, 774 F.2d at 266. Severance is permitted upon a showing of real prejudice to the individual defendant. *Id.* To make a showing of prejudice, an appellant must establish something more than the mere fact that she would have a better chance for acquittal had she been tried separately. *Lewis*, 759 F.2d at 1341 (citation omitted); *United States v. Krevsky*, 741 F.2d 1090, 1094 (8th Cir. 1984).

■ A denial of severance will not be reversed unless real prejudice and an abuse of discretion are shown. *Mims*, 812 F.2d at 1076, *Krevsky*, 741 F.2d at 1094. We hold that the District Court properly exercised its discretion in refusing to grant separate trials in the present case. The charges in the indictment clearly related to the same alleged series of transactions, making joinder proper under Rule 8(b). Also, the record indicates that any error would have been harmless. Any exculpatory testimony

by Jimmie Mercer would have been subject to impeachment by government witnesses.

■ Gloria's contention that she was prejudiced by the jury's inability to compartmentalize the evidence presented is similarly without merit. In support of her claim, she asserts that the government's case contained a disproportionate amount of evidence against Jimmie. This alone is not grounds for severance, see *United States v. Knife*, 592 F.2d 472, 480 (8th Cir.1979), and there is nothing in the record to indicate that the jury could not reasonably compartmentalize the evidence.

## II.

■ Gloria also contends that the Court erred when it did not excuse nine jurors for cause based upon the pretrial publicity relating to Gertrude Morgan's disappearance. Gloria asserts that the trial court's refusal to excuse a juror for cause constitutes reversible error despite the defendant's use of peremptory challenges because as a result of the error the number of peremptory challenges available to the defense was reduced. We disagree. Recently, the United States Supreme Court held that even though the trial court erred in failing to remove a juror for cause, the error did not violate the petitioner's constitutional right to an impartial jury since the defendant was able to remove the juror with a peremptory challenge. *Ross v. Oklahoma*, ── U.S. ──, ──, 108 S.Ct. 2273, 2277, 101 L.Ed.2d 80 (1988). So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the defendant's constitutional right was violated. *Id.* ── U.S. at ──, 108 S.Ct. at 2278. The jury that heard the present case was impartial, thus we do not need to address whether the trial court's failure to remove certain jurors for cause was proper.

Jimmie also claims that the Court erred relating to pretrial publicity when the

---

**3.** Fed.R.Crim.P. 14 reads in pertinent part:
   Relief from Prejudicial Joinder. If it appears that a defendant * * * is prejudiced by a joinder * * * of defendants in an indictment

* * * or by such joinder for trial together, the Court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

Court denied his motion for change of venue.[4] He claims that the Court's ruling denied him due process because he was convicted by a jury that was not impartial. Defendant contends that the prejudicial effect of the publicity was demonstrated by the fact that many of the prospective jurors seated had read or heard about the case.

■ Pretrial publicity may be so prejudicial as to require a conviction be set aside. See *Sheppard v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Irwin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). But the publicity in the present case did not rise to that level. The existence of prejudice among prospective jurors does not necessarily mean that an impartial jury cannot be impaneled. *Mastrian v. McManus,* 554 F.2d 813, 818 (8th Cir.), *cert. denied,* 433 U.S. 913, 97 S.Ct. 2985, 53 L.Ed.2d 1099 (1977). "The test is whether the prospective juror 'can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Id.* (quoting *Murphy v. Florida,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)). The voir dire testimony in this case demonstrates that the jurors who were ultimately seated could base his or her decision on the evidence presented. Thus, the impartiality of the jury is adequately supported by the record. *See Clark v. Wood,* 823 F.2d 1241, 1244 (8th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 334, 98 L.Ed.2d 361 (1987). It should also be noted that Judge Filippine properly reserved his ruling on the motion for change of venue until voir dire was completed. *See United States v. Bliss,* 735 F.2d 294, 297 (8th Cir.1984). Defendant was not prejudiced by the District Court's ruling.

### III.

Jimmie Mercer contends that the District Court erred in refusing his proposed jury instruction concerning his authority to cash the checks.[5] Jimmie's defense theory was that he had authority, and good faith reliance on apparent authority, to cash the checks. A defendant is entitled to an instruction on his theory of the case if there is evidence to support it and a proper request is made. *United States v. Gilliss,* 645 F.2d 1269 (8th Cir.1981); (citing *United States v. Brown,* 540 F.2d 364, 380 (8th Cir.1976)).

■ However, the instructions in this case taken as a whole, adequately advised the jury on defendant's theory. The jury was instructed that an essential element of the crime was intent to defraud. The jury was also instructed that the defendant had to know the payee's endorsement was forged, and a forged signature was defined as a signature of another person done "willfully, and without authority, and with intent to defraud." Intent to defraud was specifically defined. Thus, the defendant's proposed instruction was merely cumulative and we find the Court did not err in instructing the jury as it did.

### IV.

■ Finally, both defendants assert that the Court erred in denying their motions for acquittal. We disagree. A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged. *See United States v. De-Luna,* 763 F.2d 897, 924 (8th Cir.), *cert.*

---

**4.** In January and early February of 1987 there were news stories surrounding the execution of the search warrant at the Mercers' residence. The Mercers trial took place in July and early August of 1987. During the intervening six months there was no additional publicity regarding the case until jury selection began.

**5.** Defendant's proposed instruction:
   A false or forged writing is not established by the bare fact that one man has signed the name of another to a writing having apparent legal significance because the signing:
   (1) may have been authorized, in which case the writing is not false, or,
   (2) though unauthorized, it may have been in the bona-fide belief in the existence of such authority, in which case, although the writing is actually false, it was prepared without an intent to defraud.

*denied,* 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). We will reverse only if we conclude that no reasonable fact-finder could have found the defendant guilty beyond a reasonable doubt. *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988). We find that the evidence, viewed in the light most favorable to the government, amply demonstrates that Jimmie Mercer passed forged United States treasury checks and that Gloria Mercer aided and abetted the passing of those checks. Also, the evidence demonstrated that both are guilty of conspiracy to defraud the United States Government.