855 P.2d 776

**STATE of Arizona, Appellee,**

v.

**Federico Lico HUERTA, Appellant.**

**No. CR–91–0401–PR.**

Supreme Court of Arizona.

June 24, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Appeals Section, R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Michael J. Burke, La Paz County Public Defender, Parker, for appellant.

## OPINION

MOELLER, Vice Chief Justice.

### FACTS

Defendant was charged with two counts of child molestation. The two counts involved separate incidents with different victims. During jury selection, the court asked the jury panel whether any of them would automatically feel defendant was guilty simply because a police officer had accused or arrested him. In response, one juror volunteered that, because defendant had been charged with two separate counts involving separate victims, he believed defendant was probably guilty.

On further questioning by the trial judge on whether he could be a fair and impartial juror, the juror responded "[n]ot with two counts being alleged against him by two different victims, sir." When the court asked whether that was the only reason that the juror could not be fair and impartial, the juror responded "[d]epends on what's presented by [the prosecutor] and that. I don't feel that I can."

Defendant challenged the juror for cause. The trial court denied the challenge, and defendant used one of his peremptory challenges to remove the challenged juror. Defendant was convicted on both counts and sentenced to two consecutive seventeen-year terms of imprisonment. On appeal, the court of appeals agreed with defendant that the trial court erred in denying his challenge for cause. *See State v. Huerta*, 170 Ariz. 584, 586, 826 P.2d 1210, 1212 (App.1991). This finding of error is unchallenged in this court. Notwithstanding the error, the appeals court, applying a harmless error analysis, held that defendant was not entitled to a new trial because he had not shown that a biased juror served on the panel that convicted him. *Id.* at 587, 826 P.2d at 1213. Therefore, the court of appeals affirmed defendant's convictions and sentences. *Id.* at 589, 826 P.2d at 1215.

We granted review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24, and Rule 31.19, Ariz.

R.Crim.P. We conclude, contrary to the court of appeals, that existing Arizona precedent on this point has not been, and should not be, overruled. That precedent requires reversal when a trial judge erroneously fails to excuse a juror for cause.

## ISSUE PRESENTED

Whether reversal is required when a trial judge erroneously denies a challenge to a juror for cause.

## DISCUSSION

Arizona provides for peremptory challenges by court rule. For criminal cases, Rule 18.4(c), Ariz.R.Crim.P., states in part:

Both parties shall be allowed the following number of peremptory challenges:

(i) Ten, if the offense charged is punishable by death.

(ii) Six, in all other cases tried in Superior Court.

In enforcing this rule, as well as its civil counterpart, Rule 47(e), Ariz.R.Civ.P., Arizona courts have long held that a litigant who is denied the full use of the allotted peremptory challenges is denied a substantial right, which requires reversal, even absent an independent showing of prejudice ("the Arizona rule"). *See, e.g., Wasko v. Frankel,* 116 Ariz. 288, 290, 569 P.2d 230, 232 (1977); *State v. Sexton,* 163 Ariz. 301, 303, 787 P.2d 1097, 1099 (App. 1989).

The court of appeals concluded that the reasoning in the recent Supreme Court case of *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), and Justice Corcoran's special concurrence in our recent case of *State v. Comer,* 165 Ariz. 413, 431, 799 P.2d 333, 351 (1990), *cert. denied,* 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991), eroded support for the Arizona rule. Because the disqualified juror had been removed by the use of one of defendant's peremptory challenges, the court of appeals held there was no reversible error. *See Huerta,* 170 Ariz. at 585–87, 826 P.2d at 1211–13. The state urges us to reject our earlier cases and adopt the court of appeals' opinion. In light of the court of appeals' opinion and the state's arguments, we conclude that it is appropriate to revisit the history and development of the Arizona rule to determine whether we should continue to follow it.

## DEVELOPMENT OF THE ARIZONA RULE

The history of the Arizona rule is not without some inconsistency. In the early case of *Encinas v. State,* 26 Ariz. 24, 28–29, 221 P. 232, 233 (1923), we looked to California law to guide us. The California rule was that "the order overruling challenge for cause must amount to prejudicial error in order to require reversal...." *Id.* at 28, 221 P. at 233 (citing *People v. Johnson,* 57 Cal.App. 391, 207 P. 281 (1922)). We followed the California rule. *Encinas,* 26 Ariz. at 28–29, 221 P. at 233. Our holding was based in part on Ariz. Const. art. 6, § 22 (now § 27), which states:

No cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done.

Implicit in the *Encinas* opinion was the proposition that failure to strike a biased juror for cause was "technical error." *Encinas,* 26 Ariz. at 28–29, 221 P. at 233; *see also B.W.L. Sam v. State,* 33 Ariz. 383, 399–400, 265 P. 609, 615 (1928) (failing to follow the law in forming the jury panel was "technical error," not requiring reversal in the absence of a showing of other prejudice to the defendant).

However, the *Encinas* view that depriving a litigant of the full complement of allotted peremptory challenges was mere technical error was later expressly rejected by this court. *See State v. Thompson,* 68 Ariz. 386, 389–92, 206 P.2d 1037, 1039–40 (1949). In *Thompson,* a criminal case, the defendant exercised five peremptory challenges, but the clerk failed to remove three of those challenged from the jury panel. *Id.* at 389, 206 P.2d at 1038–39. The three jurors erroneously left on were part of the panel that heard the case and convicted the defendant. *Id.* We noted that breaches of the formal rules of jury selection had long been looked upon as mere technical errors

not requiring reversal in the absence of a separate showing of prejudice. We ruled, however, that

> [w]hile it is true that there is no constitutional right to peremptory challenges in this state, it being purely legislative in origin [citation omitted] or granted by rules of criminal procedure having the effect of law [citation omitted], still *this is a substantial rather than a mere procedural or technical right* and should be fully enforced as an aid in securing an impartial jury.

*Id.* at 390, 206 P.2d at 1039 (emphasis added).

The *Thompson* court therefore held, without referring to the earlier *Encinas* case, that Thompson's conviction must be reversed, even though he had not independently shown that any juror who sat was, in fact, disqualified other than through use of a peremptory challenge. *Id.* at 390–91, 206 P.2d at 1039–40.[1] After *Thompson,* the right to peremptory challenges was incorporated into the rules of criminal procedure. *See* Rule 225, Ariz.R.Crim.P. (1956).

■ In *Wasko v. Frankel,* a civil case, we faced the same factual situation we face today. 116 Ariz. at 289–90, 569 P.2d at 231–32. There, a trial judge erroneously denied a motion to strike a biased juror for cause, and the plaintiff was forced to use a peremptory challenge to remove the juror. *Id.* The court, implicitly overruling *Encinas* without citing it, followed the *Thompson* lead and held that

> [t]he right of a party to peremptory challenges is a substantial right of which he should not be deprived.... Peremptory challenges form an effective method of assuring the fairness of a jury trial. Hence, forcing a party to use his peremptory challenges to strike jurors who should have been stricken for cause denies the litigant a substantial right.

*Id.* at 290, 569 P.2d at 232 (citations omitted). Thus, the court reversed the judgment, even though plaintiff had shown no separate prejudice as a result of the trial judge's error. *Id.; see also Sexton,* 163 Ariz. at 303, 787 P.2d at 1099 (a recent court of appeals case applying *Wasko* in a criminal case). Existing Arizona precedent therefore clearly provides that when a trial judge erroneously denies a challenge for cause, reversal is required even if the challenging party does not independently show that a biased juror sat on the case.

The state argues, however, that language in two Arizona cases, *State v. Chaney* and *State v. Sexton,* undermines the reasoning of *Thompson* and *Wasko.* We disagree. In *State v. Chaney,* 141 Ariz. 295, 303, 686 P.2d 1265, 1273 (1984), the holding was that the trial judge *had not abused his discretion* in failing to remove a juror for cause. We did state in passing, however, that "Chaney ha[d] not indicated whether there was a petit jury member who he would have excused peremptorily but could not because he had used a peremptory strike to excuse the juror who made the statement." *Id.* In *Sexton,* 163 Ariz. at 303, 787 P.2d at 1099, the court of appeals expressly applied the rule of *Wasko* and *Thompson* and reversed because the trial court had erroneously denied a challenge for cause. In its discussion of this issue, the court merely included the fact that defense counsel had stated on the record that she would have used the wasted peremptory challenge on another juror if the trial court would have excused the challenged juror. *Id.* at 302, 787 P.2d at 1098. In our view, neither of the casual statements in *Chaney* or *Sexton* call into question the continued validity of the Arizona rule announced in *Thompson* and *Wasko.*

---

1. Justices Corcoran and Martone argue in dissent that *Thompson* is distinguishable because, in that case, jurors that had been struck by the defendant actually sat on the case. The principle behind *Thompson,* however, is the same one we face today. Thompson got less than the full benefit of his peremptory challenges as did the defendant in this case. The fact that defendant here did not state what he intended to do with the lost peremptory challenge does not change the analysis. Requiring the defendant to use the magic words to win reversal exalts form over substance.

The state and the court of appeals noted, however, that recently, in *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988), the United States Supreme Court held that the Sixth and Fourteenth Amendments to the United States Constitution do not require reversal of a conviction when a defendant is forced to use a peremptory challenge to strike a biased juror from a jury panel, as long as the jury that hears the case is fair and impartial. *Ross* arose under Oklahoma law. Oklahoma law required that a defendant remove the biased juror with a peremptory challenge to preserve for appeal a judge's refusal to strike a juror for cause. *Id.* at 89, 108 S.Ct. at 2279. The defendant argued that this requirement of Oklahoma law violated his rights to federal due process. The Supreme Court disagreed, stating that the defendant would have been denied due process only if he did "not receive that which state law provides." *Id.* The Court concluded that neither the Due Process Clause nor the jury provisions of the Sixth Amendment require reversal if a defendant is required under state law to use a peremptory challenge to cure a trial judge's error in failing to strike a biased juror for cause. *Id.* at 90, 108 S.Ct. at 2279.

Clearly, *Ross* teaches that federal constitutional provisions are not violated by the approach taken by the court of appeals' in this case. Our earlier cases, however, are not bottomed on federal constitutional law, but upon state procedural law, which is established by a long line of Arizona authority. *Ross* therefore does not control our decision. *See Michigan v. Long,* 463 U.S. 1032, 1040, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201 (1983).

## POLICIES BEHIND THE ARIZONA RULE

Stare decisis commands that we not lightly overrule prior case law, and we will not do so in the absence of compelling reasons. *Hedlund v. Sheldon,* 173 Ariz. 143, 840 P.2d 1008 (1992). Mere disagreement with those who preceded us is not enough. *State v. Salazar,* 173 Ariz. 399,

416, 844 P.2d 566, 583 (1992) (citing *State v. Crowder,* 155 Ariz. 477, 483, 747 P.2d 1176, 1182 (1987) (Moeller, J., concurring in part and dissenting in part)). However, we do not disagree with the rationale of *Thompson* and *Wasko.* We believe it is sound and that the cases should not be overruled.

"The peremptory challenge has very old credentials." *Swain v. Alabama,* 380 U.S. 202, 212, 85 S.Ct. 824, 831, 13 L.Ed.2d 759 (1965), *overruled by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Indeed, they had long been in use by the time Parliament first sought to regulate them in 1305. *See id.* 380 U.S. at 213, 85 S.Ct. at 832. The United States Congress first authorized using peremptories in federal court in 1790, *id.* at 214, 85 S.Ct. at 832, and today the practice continues by rule in the federal system, Fed.R.Crim.P. 24(b).

Long before *Ross,* and indeed before our initial proclamation in *Encinas,* the United States Supreme Court held that peremptory challenges were not mandated by the United States Constitution. *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 30, 63 L.Ed. 1154 (1919). As even the *Ross* Court conceded, however, "the right to exercise peremptory challenges is ' "one of the most important of the rights secured to the accused." ' " *Ross,* 487 U.S. at 89, 108 S.Ct. at 2278 (quoting *Swain,* 380 U.S. at 219, 85 S.Ct. at 835 (quoting *Pointer v. United States,* 151 U.S. 396, 408, 14 S.Ct. 410, 414, 38 L.Ed. 208 (1894))).

Peremptory challenges are designed to legitimize an important purpose in our criminal justice system. They protect the defendant from jury resentment to questions asked in attempting to exercise a challenge for cause. *See Lewis v. United States,* 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892). Peremptory challenges also help ensure that the defendant holds no prejudice against any juror. "[T]he law wills not that [a party] should be tried by any one [juror] against whom he has conceived a prejudice...." *Id.* Peremptories also "allow the exclusion of persons from juries when their neutrality is threatened by their backgrounds, group af-

filiations or unconscious biases" not admitted during voir dire. Note, *Ross v. Oklahoma: A Strike Against Peremptory Challenges*, 1990 Wis.L.Rev. 219, 223.

Reversal is the only feasible way to vindicate a party's "substantial right" to peremptory challenges, which right is clearly impinged when a trial judge erroneously denies a challenge for cause. Given the Arizona cases and their supporting rationale, a harmless error analysis such as that applied by the court of appeals and argued for by the dissent in this case is not appropriate in Arizona. Adoption of such a harmless error test would inevitably lead to bizarre results. Under the Hobson's choice presented by the dissent, the defendant who strikes the biased juror can never show prejudice, but the defendant who leaves the biased juror on the panel waives the issue. It seems that under the dissent's view, a party can only show reversible prejudice if the judge erroneously denies one more challenge for cause than a party has peremptory challenges. Such a holding would encourage parties to make increased efforts to demonstrate bias on the part of some of the other jurors, either before, during, or after the trial. This situation would lead to an ongoing trial of the jurors instead of the merits of the case. We do not wish to adopt a rule that will encourage and place a premium on such gamesmanship and nonproductive judicial proceedings.

We reject the argument, which the dissent advances and which has some illusory appeal, that a party is entitled only to a fair trial and not to a trial with particular jurors.[2] *See also Comer*, 165 Ariz. at 431, 799 P.2d at 351 (Corcoran, J., specially concurring). Justice Corcoran notes that the evidence of defendant's guilt is strong and that defendant has not shown that any juror that actually sat was prejudiced. He believes that is all the law requires. Justice Martone argues that the defendant has not even stated what he would have done with the peremptory challenge if not forced

to strike the biased juror; therefore, we must presume that the jury that sat was fair and impartial. We believe that these arguments miss the point and the policy behind the Arizona rule. We simply cannot presume that a trial is fair when a trial judge erroneously fails to dismiss a biased juror for cause. *Cf. Thompson*, 68 Ariz. at 391, 206 P.2d at 1040. In most cases, a party cannot possibly show what effect the trial judge's error had upon the outcome of the trial. But one thing is certain: the trial judge's error forces the party correctly challenging a juror for cause to waste a peremptory challenge, giving that party one less peremptory challenge than the other side—a result that we are unable to condone. *Cf. Ross*, 487 U.S. at 91–92, 108 S.Ct. at 2280 (Marshall, J., dissenting). The adversary system demands a level playing field to work properly. A party that correctly challenges a juror for cause should not bear the brunt of the court's error in denying the challenge. Although trial courts have considerable discretion in ruling on challenges for cause, they should not have carte blanche to deny them, a result that will inevitably flow from the court of appeals' approach.

If the purposes behind peremptory challenges are to be advanced, the defendant should not be required to use peremptories as a "safety net" for errors made by a trial court in addressing challenges for cause. In Arizona, by rule, a criminal defendant has a right to exercise peremptory challenges. Rule 18.4(c), Ariz.R.Crim.P. If this right is to mean anything, the parties must be able to exercise strikes independent of the court's rulings on challenges for cause. The court of appeals' holding—burdening the parties with a supervisory duty over the trial court when it errs in denying a challenge for cause—eviscerates the substance of challenges for cause *as well as* peremptory challenges. Although *Ross* suggests that peremptory challenges constitutionally may be eliminated, such a

---

2. Justice Corcoran argues that our opinion can be read to allow the defendant a jury of his choosing. This is not the case. The right to peremptory challenges is not the right to select

any particular jury, but the right to reject certain jurors. *See State v. Zimmer*, 106 Ariz. 166, 168–69, 472 P.2d 35, 37–38 (1970).

change—even if desirable—should be made by following appropriate procedures, rule 28, Ariz.R.Sup.Ct., not by merely using this case as a vehicle for gutting the substance of the right.

## CONCLUSION AND DISPOSITION

Requiring a party to show separate prejudice when a trial judge erroneously fails to remove a biased juror would effectively eviscerate the right to peremptory challenges in Arizona. The prejudice of having one less peremptory challenge than the other side is enough to mandate reversal. If peremptory challenges are worth having at all, they are worth protecting. Because the rule of *Thompson* and *Wasko* does just that, we adhere to the rule announced in those cases. Defendant's convictions are reversed and this case is remanded to the trial court for a new trial. The court of appeals' opinion is vacated.

FELDMAN, C.J., and ZLAKET, J., concur.

CORCORAN, Justice, dissenting:

An old legal adage holds that "bad facts make bad law." A more recent corollary is that "odd facts make odd law." *Doggett v. United States,* —— U.S. ——, ——, 112 S.Ct. 2686, 2694, 120 L.Ed.2d 520 (1992) (Thomas, J., dissenting). In this case, the majority reaches a bizarre result and creates a new corollary: good facts make bad law.

### I. *The Facts*

Defendant was charged with, and a fair and impartial jury convicted him of, two counts of child molestation. Defendant's victims were his niece and his half-sister. The jury found these children credible as witnesses. Their statements were spontaneous and consistent, and showed knowledge of intimate sexual acts well beyond that of other children their ages. Both children's statements were corroborated by physical indications of abuse.

The children testified with great difficulty. Defendant's niece attempted to recount two separate instances of molestation by her 36–year–old uncle. The prosecutor tried to lead her as gently as possible through the painful details. She was about 6 years old and in kindergarten the first time defendant molested her. She told the jury that her uncle took her into a bedroom and placed her on the bed on her back with her feet hanging over the edge. He then removed her panties, knelt beside her, and touched her private part with his, both outside and inside. He made her private part wet. She was 8 years old and in second grade when she told the jury about this molestation. The niece proceeded with greater difficulty when asked about another molestation, in which her uncle touched her private parts and made her touch his, which were wet. She had difficulty telling the jury what happened. She was then subject to cross-examination.

The other child, defendant's half-sister, experienced great distress on the witness stand. The prosecutor terminated the direct examination almost immediately because the child began to cry and could not continue. Cross-examination followed a 3–minute recess which was taken to give the child time to regain her composure. During the cross-examination, she told how defendant had placed her on his wet lap with his pants unzipped. She was 8 years old and in second grade at the time. In a previously made videotape, she told of other incidents of molestation by defendant.

In addition to the testimony of the two children, the prosecution offered expert testimony by a physician and two social workers. The physician, a pediatric specialist in the field of child abuse, made physical findings of molestation which corroborated the children's stories. The social workers, who also specialize in child abuse, interviewed both children and videotaped the interviews, which the jury later viewed. Additional witnesses also testified for the prosecution.

Defendant testified that these incidents of molestation never happened. The defense also offered the testimony of two other witnesses. One, the expert witness, was a medical general practitioner.

The jury deliberated for about two hours before finding defendant guilty on 2 counts of child molestation beyond a reasonable doubt. The trial judge later denied the motion for a new trial on three grounds, one of which was that the verdicts were correct based on the evidence presented. These verdicts were based on substantial evidence of guilt.

## II. *The Law*

A number of constitutional provisions, statutes, and rules come into play in considering this case.

A defendant in a criminal prosecution has the right to "trial by an impartial jury." Ariz. Const. art. 2, § 24. *See* rule 18.4(b), Arizona Rules of Criminal Procedure ("fair and impartial verdict").

In determining whether a defendant has had trial by "an impartial jury," this court is admonished to consider fundamental principles. To adhere to the constitution, this court is required to look to the past.

A frequent recurrence to fundamental principles is essential to the security of individual rights....

Art. 2, § 1.

The Constitution also admonishes judges that [no] cause shall be reversed for technical error in ... proceedings when upon the whole case it shall appear that substantial justice has been done.

Art. 6, § 27. *See also* Rule 61, Arizona Rules of Civil Practice.

The Arizona legislature has also adopted a statute which is relevant to the issues of this case:

Neither a departure from the form or mode prescribed in respect to any pleadings or proceedings, nor an error or mistake therein, shall render the pleading or proceeding invalid, unless it actually has prejudiced, or tended to prejudice, the defendant in respect to a substantial right.

A.R.S. § 13–3987.

The *Encinas* case, decided by this court in 1923, is the earliest Arizona case deciding the point at issue. The majority opinion in this case correctly characterizes *En-*

*cinas,* but the majority incorrectly implies that *Encinas* was "expressly rejected by this court" in *Thompson.* In any event, the issue in *Thompson* was *not* whether the erroneous denial of a challenge for cause by the trial court, where the venire juror *does not sit* on the petit jury, required reversal of a conviction. The issue in *Thompson* was whether 3 venire jurors stricken by the defendant with peremptory challenges *who did sit* on the petit jury required a reversal of the conviction. I agree with the result in *Thompson;* it is reversible error for the court to allow a venire juror validly stricken by peremptory challenge *to sit* on the petit jury.

Unfortunately, this court in *Wasko v. Frankel,* acting in ignorance of the holding in *Encinas,* applied the holding in *Thompson* to the facts in *Encinas,* resulting in a total change in the law. The *Wasko* court, because it did not see *Encinas* in front leading the way, made a U-turn and went in the wrong direction. Thereafter, the same mistake has been repeated by Arizona appellate courts, including the majority in this case.

Clearly, a defendant's right to a fair and impartial jury is a "substantial right." It is wrong to conclude, however, that a reversal must result where the trial court erroneously denies a challenge for cause and the defendant strikes the venire juror with a peremptory strike. The use of the peremptory strike vindicates the defendant's "substantial right" to a fair and impartial jury. That happened here. The defendant secured and was convicted by a fair and impartial jury. Looking at the "whole case," as we must under article 6, § 27, the error in the trial court was "technical error." I conclude that "substantial justice has been done."

The cases are too numerous to need citation for the propositions that the defendant is entitled to a fair and impartial jury, not to one of his own choosing; and that although the defendant is entitled to a fair trial, he is not entitled to a perfect one. The majority opinion will, unfortunately, fairly be read to say that the defendant is

entitled to a jury of his choosing and to a perfect trial.

### III. *Victims' Bill of Rights*

In 1990, the Victims' Bill of Rights was added by the people of Arizona to the Arizona Constitution to "preserve and protect victims' rights to justice and due process...." Ariz. Const. art. 2, § 2.1. The Bill guarantees, among other things, a victim's right to "a speedy trial or disposition and prompt and final conclusion of the case *after* the conviction and sentence." Ariz. Const. art. 2, § 2.1(10) (emphasis added).

In support of the constitutional amendment, the Arizona Legislature adopted the Victims' Rights Implementation Act in 1991. A.R.S. §§ 13–4401 to –4437. The legislature, recognizing that innocent people suffer economic loss, personal injury, emotional scars of the soul, or even death as a result of criminal acts, aspired to afford crime victims "basic rights of respect, protection, participation *and healing of their ordeals.*" Laws 1991, Ch. 229, § 2 (legislative intent) (emphasis added). By its nature, a non-essential new trial prolongs the criminal justice process and precludes healing of the ordeal for the victim.

When the victims' rights provisions and the legislative intent behind them are read in concert with Ariz. Const. art. 6, § 27, and the other applicable constitutional provisions, statutes, and rules, reversing a criminal conviction solely on non-prejudicial challenge for cause error grounds is oxymoronic.

In this case, not only will the scabs on the wounds of the victims (and of the families of the victims who are also the family of the defendant) be picked, but the wounds will be rendered anew. This will be done in the public view with a new trial and a second verdict from another fair and impartial jury.

Clearly, the right to a fair and impartial jury is a substantial right. The majority cites no basis for concluding that the defendant has been prejudiced. The defendant got a fair and impartial jury and that jury convicted him. With the reversal of the convictions in this case and remand to supe-

rior court for a new trial, the result is that the two victimized children will be dragged back into court to give the defendant (one victim's half-brother and the other victim's uncle) another fair trial before a different fair and impartial jury.

I do not see why a new trial before a totally different fair and impartial jury is necessary where the original fair and impartial jury was only metaphysically different from the fair and impartial jury that might have resulted if the trial judge had granted the challenge for cause.

Metaphysical prejudice is not enough to justify a new trial. A reversal should not result from error in the trial court that neither advantages the prosecution nor prejudices the defendant.

### IV. *Caveats*

A caveat for trial judges: The trial judge was wrong in failing to grant the challenge for cause—flat wrong. There was *no* justification to deny the challenge to the venire juror. Trial judges should rule on challenges for cause so that *all* members of the venire panel are fair and impartial *before* the parties exercise their peremptory strikes.

Caveat for prosecutors: The trial judge was wrong—so was the prosecutor. The prosecutor should have joined in the defendant's challenge to the venire juror or stipulated to the juror's discharge. A prosecutor must not only assert the rights of the state, but protect the rights of the defendant when the defendant is being dealt with unfairly by the court. A prosecutor is not a mere adornment in the courtroom who can stand by deaf and dumb while the trial judge is committing error. If the trial judge persists in error after being advised by the prosecutor, the prosecutor should strike the juror with a peremptory challenge and state that on the record. If the prosecutor had done that here, the convictions would not be reversed.

### V. *Conclusion*

I believe this court should affirm defendant's convictions, reaffirm *Encinas*, adopt

the court of appeals' opinion, and overrule *Wasko* and its progeny. We should straighten out the erroneous U-turn taken by this court in 1977.

MARTONE, Justice, dissenting.

The result achieved by the majority is not supported by our own cases, federal common law, or the rule adopted by most states. The majority's reliance upon the doctrine of *stare decisis* is misplaced. An analysis of our cases, federal law, and the cases in other states indicates that the Arizona rule is contrary to that stated by the majority, and it ought to be.

We begin with the Arizona rule. As the court notes, *ante,* at 263, 855 P.2d at 777, the Arizona rule is stated in *Encinas v. State,* 26 Ariz. 24, 28–29, 221 P. 232, 233 (1923). We there held that an "order overruling [a] challenge for cause must amount to prejudicial error in order to require [a] reversal." As long as a defendant is not forced to take an objectionable juror, there is no prejudice. *Id.*

The majority claims that the rule of *Encinas* was expressly rejected by this court in *State v. Thompson,* 68 Ariz. 386, 206 P.2d 1037 (1949). *Ante,* at 263, 855 P.2d at 777. On the contrary, *State v. Thompson* has nothing at all to do with a court's erroneous failure to remove a juror for cause. Instead, the clerk in *Thompson* erroneously kept on the jury three persons against whom the defendant exercised peremptory challenges. Thus, the defendant went to trial in front of a jury consisting of three persons whom he had struck. This is a far cry from *Encinas* and the case before this court. In *Thompson,* we held that "[t]he jury as formed was not a lawful jury" because it was constituted of persons the defendant removed. *Id.* 68 Ariz. at 393, 206 P.2d at 1041. We also held that "there is no constitutional right to peremptory challenges in this state," *id.* at 390, 206 P.2d at 1039, and that "a defendant is not entitled to be tried by any particular jury, but merely by one which is fair and impartial." *Id.* at 391, 206 P.2d at 1040. It is clear, therefore, that *Thompson* is a defectively constituted jury case, and not a

case in which a judge erroneously overruled a challenge for cause requiring a party to exercise a peremptory strike. Thus, *Thompson* is no support for today's decision.

In contrast to *Thompson, Wasko v. Frankel,* 116 Ariz. 288, 569 P.2d 230 (1977), on the surface at least, supports today's decision. But *Wasko* is itself revisionist judicial decision making. Without even citing *Encinas,* the Arizona rule, the court, in a very cryptic opinion, turned to the law of Utah for its rule of decision. There is no indication that the court even knew that an Arizona rule existed. If we were to cling to the doctrine of *stare decisis,* we would be required to acknowledge the rule of *Encinas,* characterize *Thompson* as a case having nothing to do with challenges for cause, and characterize *Wasko* as a mistake. I do not share the court's view that *stare decisis* requires us to do otherwise.

Let us turn next to federal law. The majority characterizes *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988), as permitting Arizona to adopt a no prejudice, no foul rule. But the no prejudice, no foul rule is also the rule of federal criminal prosecutions. *Hopt v. Utah,* 120 U.S. 430, 436, 7 S.Ct. 614, 617, 30 L.Ed. 708 (1887); *U.S. v. Farmer,* 923 F.2d 1557 (11th Cir.1991); *U.S. v. Mercer,* 853 F.2d 630 (8th Cir.1988), *cert. denied,* 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988), *and cert. denied,* 490 U.S. 1110, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989).

Other states, too, require a showing of prejudice under these circumstances. *Pickens v. State,* 301 Ark. 244, 783 S.W.2d 341 (1990), *cert. denied,* 497 U.S. 1011, 110 S.Ct. 3257, 111 L.Ed.2d 766 (1990); *Dawson v. State,* 581 A.2d 1078 (Del.1990), *vacated on other grounds,* — U.S. —, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992); *People v. Gleash,* 209 Ill.App.3d 598, 154 Ill.Dec. 348, 568 N.E.2d 348 (1991). Some states take the position that a defendant must show that he was disabled from using a peremptory strike on an additional unacceptable juror. *Trotter v. State,* 576 So.2d 691 (Fla. 1990); *Foster v. Commonwealth,* 827 S.W.2d 670 (Ky.1992), *cert. denied,* — U.S. —, 113 S.Ct. 337, 121 L.Ed.2d 254 (1992); *State v. Doleszny,* 146 Vt. 621, 508

A.2d 693, 694 (1986); *Johnson v. State*, 713 S.W.2d 741 (Tex.App.1986).

It is plain, therefore, that under a mistaken understanding of *stare decisis,* the court today adopts a rule which has been rejected by most other courts. Let us now explore the court's reasons for preferring such a rule. The court first says that peremptory challenges are important because they "protect the defendant from jury resentment to questions asked in attempting to exercise a challenge for cause." *Ante,* at 265, 855 P.2d at 779. This ignores the fact that in Arizona the judge conducts voir dire in criminal cases. Rule 18.5(d), Ariz.R.Crim.P. And challenges are made "out of hearing of the jurors." Rule 18.5(f), Ariz.R.Crim.P. The court says that peremptory challenges help ensure that the defendant holds no prejudice against any juror. *Ante,* at 265, 855 P.2d 779. But the reverse is true. Peremptories are used by the defendant to strike persons whom the defendant thinks may be prejudiced against him. The court says that peremptories allow the exclusion of persons whose neutrality is threatened by their backgrounds, group affiliations, or unconscious biases not admitted during voir dire. *Ante,* at 265–66, 855 P.2d at 779–80. This, of course, is the vice of peremptories which led to the *Batson* case. Trial techniques treatises encourage lawyers to exercise group stereotyping when it comes to exercising peremptory challenges. An example follows:

> Some advocates who specialize in the defense of criminal cases say they prefer Jews or Irishmen to Englishmen or Scandinavians. The former, they argue, because of their religious and national background and native temperament, put a greater burden on the prosecution and are more sympathetic to an unfortunate in the toils of the law. In the matter of religion, they argue that Catholics, Episcopalians and Presbyterians are to be preferred to Baptists and Methodists, because the tenets held and disciplines prescribed for the latter make them less tolerant of human frailty.

Francis X. Busch, *Trial Procedure Materials* § 93 (1961).

Is this what we want? I had thought we were trying to discourage people from excluding jurors based upon stereotypes which are, in turn, based upon the "backgrounds and group affiliations" described by the court. The use of peremptories in this way guarantees that our juries will not be cross sections of the community. We should discourage this use, not elevate it to a legitimate practice.

The court says that the adoption of a harmless error test would lead to bizarre results. *Ante,* at 266, 855 P.2d at 780. There are no bizarre results unless you subscribe to the game theory of advocacy. Absent a showing of prejudice, one should no more count the number of peremptory strikes than one should count the number of witnesses, the length of their examination, or any other quite accidental characteristic of the trial process. What matters is the fairness and impartiality of the jury. When a party cannot show prejudice, there is no prejudice. The court engages in arithmetic as though fairness were a game of chance. But the calculus of our rule on challenges in criminal cases does not equate numerical equivalence with fairness. For example, when more than one defendant is tried, each is allowed one half the number of peremptory challenges allowed to one defendant. Rule 18.4(c)(2), Ariz.R.Crim.P. Under the court's reasoning, this would be unfair to a defendant, because he gets one half the peremptories the state gets. Our rule even acknowledges that a party may waive a right to exercise a challenge for cause by failing to make it on a timely basis. Rule 18.4(b), Ariz.R.Crim.P. This would mean that a defendant could actually be tried by a jury which includes a person against whom a challenge for cause may exist, and the trial would not be scuttled. Yet, today, the court scuttles a trial in which *no* disqualified juror sat. The court says that the adversary system demands a level playing field to work properly. *Ante,* at 266, 855 P.2d at 780. The "level playing field" metaphor supports the game theory of advocacy in which the objective is victory rather than truth. In what mischievous ways must the playing field be leveled? The same number of witnesses? Lawyers of equal talent? Parties of equal economic staying power? A trial is not a game to be won or lost, the fairness of which is mea-

sured by weighing collateral characteristics. A trial is an effort to find the truth. When a fair and impartial jury has returned a verdict, and a lawyer has been able to accomplish with a peremptory challenge that which a judge should have accomplished with a challenge for cause, no harm has been done, the process has been vindicated, and the outcome is the product of fair and impartial decision making.

The court complains that a party might make a greater effort to show bias on the part of other jurors. *Ante,* at 266, 855 P.2d at 780. The court refers to "gamesmanship," but it is a game that I do not understand. Parties always have a legitimate interest in developing the bias of jurors before a jury is sworn. It is hard to imagine why the adoption of a harmless error rule would encourage such a practice, but even if it did, what is the harm of that? There is either a basis for a challenge for cause or there is not.

The court says that it cannot presume that a trial is fair when a trial judge erroneously fails to dismiss a biased juror for cause even where the juror is dismissed peremptorily. But the fairness of a trial is judged by the fairness of the jury which hears the case. Once the exercise of the peremptory strike excuses the juror who should have been excused for cause, a court can not only presume that the trial is fair, but it will *know* that it is. The offending juror will have been removed.

The court is concerned that by being forced to use a peremptory challenge when a challenge for cause should have been honored a party has one less peremptory strike. But this case affords us no opportunity to consider that issue. Here it was undisputed that even if the defendant had a peremptory strike, he would not have used it on any of the remaining venire persons. Thus, there is no "waste" in this case. *Ante,* at 266, 855 P.2d at 780. But, were it otherwise, it would not matter. Once counsel passes a panel for cause, by definition, the parties will have a fair and impartial jury. Peremptory strikes are gravy. One of their purposes is to make up for the errors of the trial judge. So for example, as in this case, when the trial judge fails to properly honor a challenge for cause, the peremptory strike can be used. The trial can be saved. A provision for peremptory strikes is not unlike a provision for alternate jurors. They both promote the efficient administration of justice.

Peremptory strikes no longer enjoy the exalted position once described in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), *overruled by Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *Batson* reflects a more contemporary view. Indeed, Justice Marshall proposed abandoning peremptories altogether in criminal trials. 476 U.S. at 107–08, 106 S.Ct. at 1729 (Marshall, J., concurring). *Accord* James H. Kemper, *Let's Do Away With Voir Dire,* Arizona Attorney, June 1993, at 7, 10. Our approach to trials, and juries, is no longer wooden. *Cf.* B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries,* 68 Ind.L.J. (forthcoming 1993). Today's decision fails to reflect this new reality. Here, there was neither prejudice nor an allegation of prejudice. Thus, today's decision does not vindicate the right to a fair trial. We just promote an artificially sacrosanct understanding of a peremptory challenge. For all these reasons, I dissent.