VOSS, Judge[1],
dissenting.
¶ 72 I respectfully dissent. Because I believe the trial court abused its discretion in failing to strike the entire jury panel or, at a minimum, in failing to conduct further voir dire to determine whether the panel had been infected by negative and lurid gossip concerning defense attorney Carmen Fischer’s conduct, I would reverse and remand for a new trial.
¶ 73 As the Majority acknowledges, television and newspaper accounts — some the very day before jury selection in Defendant’s trial — reported that Fischer was caught having sexual contact with her “Bounty Hunter” client in a visiting room of the Maricopa County Jail. As a result of these stories, several prospective jurors recognized Fischer from the moment she entered the courtroom for jury selection. In fact, eleven of these, nearly one-third of the thirty-four panel members, raised their hands when Fischer asked if any of them “in reading the paper or watching the news” had seen any stories about any of the attorneys.
¶ 74 When these eleven prospective jury members were individually questioned in chambers as to what they had, heard, read, or seen about Fischer, three of them (May, Thomas, and Hunt) were so offended by Fischer’s behavior, that they felt they could not be fair and impartial to her client in this case. To make matters worse, after their individual voir dire in chambers concerning Fischer, nine out of the eleven panelists, including May, Thomas, and Hunt, were sent back into the jury room without any admonition to refrain from discussing Fischer’s behavior with the other prospective jurors.
¶ 75 And discuss it they did. Within a short time, two additional prospective jurors informed the court that they had heard gossip about Fischer from other members of the panel, both during lunch and in the jury room. Prospective juror Williams was brought into chambers directly after the first eleven had been questioned and sent back to the jury room. Prospective juror Divakaruni told the court he had something to discuss privately after all of the parties had returned to the courtroom and was then questioned in chambers.
¶76 During lunch, venireman Williams heard from other prospective jurors that Fischer “had been seen on television kissing one of [her] clients ... a murder suspect or something like that.” After Williams described his lunchtime discussion with other prospective jurors, the prosecutor suggested that the next few potential jurors be called into chambers to determine whether they had been exposed to stories about Fischer. *589 Defense attorney Noland agreed, but in addition requested that the entire panel be asked again what they had seen and heard about Fischer in light of the fact that the jurors had been talking to each other about it since the initial question was asked. As the record reveals, both the prosecutor and the trial judge appeared to acquiesce in Noland’s request:
MR. LYNCH: Your Honor, I was kind of thinking that maybe we ought to check the next three or four or five and see if they are going to answer yes, so we don’t have to, if they are, then we don’t have to come back in here, all of us.
MR. NOLAND: I agree. I think even after we have had this time to mull this over, if we were to ask the general question again, I have a feeling that some of the people from the original 36 may raise their hand.
I think they may have either through talking to other people in there or it just may jog their memory. I think the safe way to go is to ask the question of the entire panel, someone that has not yet raised their hand, including the people that may not be called as potential jurors.
MR. LYNCH: Well, if we are going to go back in there, I guess it doesn’t make any difference.
THE COURT: Let’s go back in there.
¶77 Before the parties returned to the courtroom, Fischer moved to strike all prospective jurors who had seen the negative news coverage of her. The court granted the motion only as to prospective jurors May, Thomas, and Hunt, and again stated, “[ljet’s go back in there.” The judge never specifically ruled on Noland’s request to conduct additional voir dire of the entire panel as to what they had seen or heard about Fischer.
¶78 Venireman Divakaruni related that overhearing three other jurors in the jury room discussing Fischer’s “bad judgment” in carrying on “some kind of personal relationship with a prisoner” reminded him that he had read about Fischer in the newspaper. After Divakaruni informed the court and the parties of the gossip concerning Fischer that had taken place in the jury room, Fischer moved to strike the entire panel, stating, “I would move to strike the panel because of this conversation here while we were back in here, and to — and I guess there is some confusion about whether these other jurors we talked to went back and talked to other people also.” Again, the judge never specifically ruled on Fischer’s motion to strike the entire panel. Instead, he asked Fischer if “subject to the record previously made,” she passed the panel for cause. Fischer stated that she did.
¶ 79 I believe that the trial court’s failure to strike the entire panel, or at least conduct further voir dire as requested by defense counsel in this case, violated Defendant’s right to trial by a fair and impartial jury. Both the United States and Arizona Constitutions guarantee a criminal defendant the right to a trial by an impartial jury. U.S. Const. Amends. VI, XIV; Ariz. Const. Art. 2, §§ 23-24. Indeed, the right to an impartial jury is fundamental and deeply embedded in American jurisprudence. In Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), the Supreme Court stated that, “[t]he constitutional standard of fairness requires that a defendant have ‘a panel of impartial, ‘indifferent’ jurors.’ ” (quoting Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)).
¶80 The guarantee of an impartial jury necessarily rests upon an adequate voir dire to identify unqualified jurors. Morgan v. Illinois, 504 U.S. 719, 729, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992); Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981). While admittedly the adequacy of voir dire is not easily the subject of appellate review, this court should not hesitate, particularly in a capital case, to find that certain questions simply have to be asked by the trial court to vindicate the accused’s right to trial by an impartial jury. See Morgan, 504 U.S. at 730, 112 S.Ct. 2222.
¶ 81 Rule 18.5(d) of the Arizona Rules of Criminal Procedure requires the trial court to “conduct a thorough oral examination of the prospective jurors.” Moreover, [ujpon the request of any party, the court shall permit that party a reasonable time to conduct a further oral examination of the pro *590 speetive jurors.” Id. The purpose of such examination by both the trial court and the parties is to provide the parties with the information needed to exercise both peremptory challenges and challenges for cause. Ariz. R.Crim. P. 18.5(e); State v. Chaney, 141 Ariz. 295, 304, 686 P.2d 1265, 1274 (1984). Indeed, the trial court does not have the discretion to deny a defense counsel’s request to conduct additional voir dire to discover information relevant to such challenges under Rule 18.5. State v. Anderson, 197 Ariz. 314, 320-21, ¶ 14, 4 P.3d 369, 375-76 (2000).
¶ 82 The required “thorough oral examination” of the prospective jurors did not occur in this case. The Majority acknowledges this fact, but dismisses it as an issue that was not raised on appeal. Ironically, the Majority at the same time finds it “impossible” to conclude that the trial judge abused his discretion in failing to strike the entire jury panel because “there is no way to know” how, or even if, sitting jurors, in addition to those subjected to in-chambers voir dire, were affected by any further gossip about Fischer’s conduct.
¶ 83 But, that is precisely the point. The issue of whether the trial court should have stricken some or all of the jury panel, and hence the issue of whether we can uphold the trial court’s decision on appeal, necessarily includes the question of whether the trial judge should have conducted additional voir dire. For it is the inadequate voir dire in this case that effectively prevented the parties, the trial court, and now this court on appeal, from determining whether other potential jurors should have been excused for cause, or whether, as defendant argues on appeal, the whole panel was tainted.
¶ 84 I believe that the issue of additional voir dire was clearly preserved in the trial court. While defense attorney Noland’s request for additional voir dire was not a model one, it certainly was enough to preserve this issue. Although the Majority professes “no desire to be hypertechnical,” it releases No-land’s statements to “ruminations” and “Proustian dream sequences.” I cannot agree.
¶ 85 Noland’s words must be taken in context and in light of the circumstances existing when he uttered them. The record clearly indicates Noland was seeking additional voir dire; he did so directly after it became known that a panel member in addition to those who initially raised their hands had heard about Fischer from other prospective jurors; he advised the court what action he desired the court to take and made known the precise area of inquiry he wished to pursue; and he did all of this before any challenges for cause were made or ruled upon. This request was real.
¶ 86 The question of whether additional voir dire should have been conducted is also of necessity incorporated in the issues raised on appeal. In her Opening Brief, Defendant framed the issue as follows: “The court should have struck the entire jury panel, or at least those jurors who had discussed lurid pretrial publicity of the court-appointed trial counsel’s public sexual conduct with a client in a different death penalty case.” The Brief goes on to argue that Defendant’s right to a fair and impartial jury panel was violated. The claim that a defendant was tried by a biased and tainted jury necessarily implicates the issue of whether the trial court should have conducted further voir dire to determine whether the panel had in fact been infected. See Mach v. Stewart, 137 F.3d 630, 632-33 (9th Cir. 1998).
¶ 87 According to the Majority, Defendant has failed to demonstrate any prejudice from the trial court’s denial of her motion to strike the jury panel because there is nothing in the record to indicate that any of the twelve jurors who decided the case could not be fair and impartial to defendant as a result of negative publicity and gossip concerning Fischer. Such prejudice, the Majority reasons, could not exist where four of the twelve sitting jurors who had knowledge of Fischer’s exploits stated that they could nevertheless be fair and impartial to Defendant, and where the record does not show whether the other eight sitting jurors were even aware of Fischer’s behavior. The Majority also suggests that this case is somehow different because the publicity and gossip concerned Defendant’s counsel, rather than Defendant. *591 Finally, the fact that the jurors’ verdicts were strongly supported by overwhelming evidence against Defendant leads the Majority to conclude that the jurors were not distracted from their duties to serve impartially.
¶ 88 Once again, the Majority’s Opinion evades the central question here — why is there no evidence in the record concerning the other eight jurors’ knowledge of Fischer’s conduct? Why is there “no way to know” from the record whether these other jurors were so offended by negative gossip concerning Fischer that it may have affected their ability to render a fair and impartial verdict in this case? I do not believe that a specific biased juror needs to be identified in order for prejudice to have resulted here; indeed, the very reason that we cannot point to a specific error in the record is that the requested additional voir dire question was never re-asked of the original panel members as requested by attorney Noland.
¶ 89 Eleven of the twelve jurors who rendered verdicts against Defendant in this case were drawn from the original thirty-four panel members. It must also be remembered that those panel members were asked if any of them would be unable or unwilling to render a verdict solely based on the evidence presented at trial before any of the discussion about Fischer — before eleven of the thirty-four revealed knowledge of the negative publicity and gossip, before three of those eleven admitted they were so disgusted by Fischer they would hold it against Defendant, and before two additional panel members informed the parties and the court that Fischer’s conduct was continuing to be discussed among the prospective jurors. This inquiry to prospective jurors also preceded Defendant’s request to conduct further voir dire of those panel members who had not been subjected to in-chambers questioning— a request that was never acted upon by the trial court. Thus, the jurors’ so-called assurances of impartiality implied at the outset of voir dire by their silence in response to the foregoing question is certainly not dispositive.
¶ 90 Some errors necessarily render a trial fundamentally unfair and cannot be harmless. This is one of them. Indeed, the harmless error analysis itself “presupposes a trial, at which the defendant, represented by counsel, may present evidence and argument before an impartial judge and jury.” Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). We cannot require a defendant to demonstrate prejudice resulting from an error by the trial court “when, as a practical matter the nature of the error renders it impossible to prove the extent of any prejudice.” Perkins v. Komarnyckyj, 172 Ariz. 115, 119, 834 P.2d 1260, 1264 (1992). Nor can overwhelming evidence of guilt be quantitatively balanced against such an error to render it harmless. As Justice Feldman recently pointed out in Anderson, 197 Ariz. at 323, ¶ 22, 4 P.3d at 378, “[ejrrors involving the composition of the court or jury affect the legitimacy of the entire proceeding, leaving nothing to measure or weigh and requiring reversal.”
¶ 91 There are further reasons why this error cannot and should not be considered harmless. The right to a trial by jury means not only a fair and impartial jury, but one lawfully constituted. State v. Zimmer, 106 Ariz. 166, 168, 472 P.2d 35, 37 (1970). “Arizona courts have long held a litigant who is denied the full use of the allotted peremptory challenges is denied a substantial right, which requires reversal, even absent an independent showing of prejudice.” State v. Huerta, 175 Ariz. 262, 263, 855 P.2d 776, 777 (1993). The trial court’s denial of the additional voir dire requested here made it impossible for defense counsel to intelligently utilize challenges for cause and peremptory strikes. This was the functional equivalent of depriving Defendant of those substantial rights, which should also lead to automatic reversal, without a showing of prejudice, under the reasoning of Huerta. The trial court also impaired Defendant’s right to the effective assistance of counsel by preventing defense counsel from developing the necessary information to exercise these challenges to the composition of the jury. See Zarabia v. Bradshaw, 185 Ariz. 1, 3, 912 P.2d 5, 7 (1996).
¶ 92 As to the Majority’s conclusion that the jurors’ opinions should matter less because they concern defense counsel, rather than Defendant, I am compelled to para *592 phrase Justice Feldman’s own recent remarks on an analogous issue: “Arizona’s system implicitly and explicitly acknowledges that jurors’ views [of counsel] could affect their ability to impartially evaluate the defendant’s guilt. Otherwise, why do we voir dire at all on ... questions dealing with [counsel]? The issue is irrelevant unless we acknowledge that jurors’ views [on counsel] affect the verdict of guilt or innocence.” Anderson, 197 Ariz. at 320, ¶ 12, 4 P.3d at 375. And a juror’s view of counsel can affect his or her ability to be fair and impartial to the defendant.[2]
¶ 93 Given the nature of the gossip in this case, and the fact that two panelists told the court that the issue continued to be discussed among prospective jurors, it was imperative for the trial court to determine through additional voir dire, as requested by defense counsel, the extent to which the remainder of the jury panel had been prejudicially infected. Without an adequate voir dire, Defendant’s federal and state constitutional guarantees to an impartial jury were not honored.

. Due to a vacancy on the court, pursuant to Article 6, Section 3 of the Arizona Constitution, the Honorable Edward C. Voss, Chief Judge of the Court of Appeals, Division One, was designated to sit on this case.

. See Cox v. Norris, 133 F.3d 565, 571-72 (8th Cir.1997) (trial court properly excused potential juror for cause who was acquainted with and had animosity towards prosecutor in the case); Hughes v. United States, 689 A.2d 1206, 1210-11 (D.C.1997) (failure of trial court to strike juror who was close friend of former prosecutor or, at a minimum, to conduct additional voir dire to determine whether actual bias existed, constituted structural error, requiring reversal); People v. Barret, 145 A.D.2d 842, 535 N.Y.S.2d 829, 830-31 (N.Y.App.Div.1988) (potential for prejudice was "readily apparent" as a result of jurors' exposure to publicity and discussion of defense counsel's own indictment on drug charges, despite juror assurances of impartiality during voir dire).